CITY OF GAITHERSBURG ET AL. *v.* MONTGOMERY
COUNTY, MARYLAND ET AL.

[No. 212, September Term, 1973.]

*Decided May 1, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY,
SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Joe M. Kyle* for appellants.

*Sanford E. Wool,* with whom was *Robert H. Levan* on the
brief, for appellee Maryland-National Capital Park and
Planning Commission. *Stephen J. Orens, Assistant County
Attorney,* with whom were *Richard S. McKernon, County
Attorney, Alfred H. Carter, Deputy County Attorney,* and
*John B. Walsh, Jr., Assistant County Attorney,* on the brief,
for appellee Montgomery County, Maryland.

ELDRIDGE, J., delivered the opinion of the Court.

The only issue in this case concerns the validity, under Art. XI-E of the Maryland Constitution, of Chapter 116 of the Laws of Maryland 1971. That statute, which adds a clause to Maryland Code (1957, 1973 Repl. Vol.), Art. 23A, § 9 (c), provides that no municipality annexing land may, for five years following annexation, rezone the land so as to permit a use substantially different from the use specified in an adopted master plan of the county or agency having planning and zoning jurisdiction over the land prior to its annexation. Chapter 116, enacted as an emergency law, became effective on April 23, 1971.

. After the effective date of Chapter 116, on June 7, 1971, the city of Gaithersburg annexed a tract of land which included a parcel of approximately 76 acres owned by Eugene B. Casey and Betty B. Casey, his wife. On the same date, the Mayor and Council of Gaithersburg placed the 76 acres in a zoning classification designated RP-20 under the city's zoning ordinance. The RP-20 classification would permit uses substantially different from the uses specified under the RP-90 classification in Montgomery County's Master Plan for Gaithersburg and vicinity and which had been in effect for the property at the time of annexation. For example, the RP-20 classification would permit multiple-family dwellings and town houses at a density of 18 dwelling units per acre. The RP-90 classification, however, requires one-family detached residences. It is conceded by all parties that the city's attempted rezoning violates § 9 (c) of Art. 23A as amended by Chapter 116.

Montgomery County, the members of the Montgomery County Council, and the Maryland-National Capital Park and Planning Commission brought this action for declaratory and injunctive relief against the city of Gaithersburg and the Caseys. The city and the Caseys defended on the sole ground that Chapter 116 violates Art. XI-E of the Maryland Constitution. The chancellor (Mathias, J.) upheld the constitutionality of the statute. He declared the rezoning to be null and void and enjoined the defendants for a five-year period from doing anything in violation of the

county's RP-90 zoning classification. From that decree, the city and the Caseys have taken this appeal.

Article XI-E of the Maryland Constitution, proposed by the General Assembly and ratified by the voters in 1954, was designed to provide a large degree of home rule for municipalities. One of the principal means of insuring this was to prevent the General Assembly from enacting legislation for particular municipal corporations. Instead, the General Assembly was authorized to group municipalities into not more than four classifications based upon population, and the General Assembly was limited to enacting public general laws applying alike to all municipalities in a particular class.[1] This was accomplished by Sections 1 and 2 of Art. XI-E, which provide:

"Section 1. Special charters generally prohibited.

"Except as provided elsewhere in this Article, the General Assembly shall not pass any law relating to the incorporation, organization, government, or affairs of those municipal corporations which are not authorized by Article 11-A of the Constitution to have a charter form of government which will be special or local in its terms or in its effect, but the General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation only by general laws which shall in their terms and in their effect apply alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article. It shall be the duty of the General Assembly to provide by law the method by which new municipal corporations shall be formed.

"Section 2. Classes of municipal corporations.

"The General Assembly, by law, shall classify all such municipal corporations by grouping them into

---

1. For discussions of the history and purpose of Art. XI-E, see Hitchins v. City of Cumberland, 208 Md. 134, 117 A. 2d 854 (1955); Bowie v. Wash. Sub. San. Comm'n, 249 Md. 611, 241 A. 2d 396 (1968); Prince George's Co. v. Laurel, 262 Md. 171, 277 A. 2d 262 (1971).

not more than four classes based on population as determined by the most recent census made under the authority of the United States or the State of Maryland. No more than one such grouping of municipal corporations into four (or fewer) classes shall be in effect at any time, and the enactment of any such grouping of municipal corporations into four (or fewer) classes shall repeal any such grouping of municipal corporations into four (or fewer) classes then in effect. Municipal corporations shall be classified only as provided in this section and not otherwise."

In order to implement Art. XI-E, the General Assembly enacted Chapter 423 of the Laws of Maryland 1955. This, together with subsequent implementing legislation, is codified in Maryland Code (1957, 1973 Repl. Vol.), Art. 23A. By § 10 of Art. 23A, the Legislature provided that all municipal corporations subject to Art. XI-E would be in a single class.

Section 9 of Art. 23A, subtitled "Home Rule," sets forth certain limitations upon municipal home rule. It is the limitation added to subsection (c) of § 9 by Chapter 116 of the Laws of Maryland 1971 which, appellants argue, violates Art. XI-E of the Constitution. Section 9 provides (with the language added by Chapter 116 in italics) as follows:

"(a) *'Municipal corporation' defined; construction of article and certain local laws.* — As used in this subtitle the term 'municipal corporation' shall include all cities, towns and villages, now or hereafter created under any general or special law of this State for general governmental purposes, which are subject to the provisions of Article 11E of the Constitution of Maryland . . . .

\* \* \*

"(c) *Limitations on charter amendments; effect of annexation.* — No municipal corporation which is subject to the provisions of Article 11E shall so

amend its charter or exercise its powers of annexation, incorporation or repeal of charter as to affect or impair in any respect the powers relating to sanitation, including sewer, water and similar facilities, and zoning, of the Washington Suburban Sanitary Commission or of the Maryland-National Capital Park and Planning Commission. Except that where any area is annexed to a municipality authorized to have and having then a planning and zoning authority, the municipality shall have exclusive jurisdiction over planning and zoning within the area annexed; provided nothing in this exception shall be construed or interpreted to grant planning and zoning authority to a municipality not authorized to exercise that authority at the time of such annexation; *and further provided, that no municipality annexing land may for a period of five years following annexation, place that land in a zoning classification which permits a land use substantially different from the use for the land specified in the current and duly adopted master plan or plans of the county or agency having planning and zoning jurisdiction over the land prior to its annexation.*"

Appellants' claim of unconstitutionality involves two steps.

*First,* appellants argue that the clause added by Chapter 116 is applicable only to municipalities in Montgomery and Prince George's Counties. This interpretation of the statute is based upon the first sentence of § 9 (c) which provides that no municipality shall affect or impair the powers of the Washington Suburban Sanitary Commission or the Maryland-National Capital Park and Planning Commission. Since the geographical areas in which these two commissions presently operate do not extend beyond Montgomery and Prince George's Counties, appellants contend that only municipalities in those two counties were contemplated by the draftsman of the first sentence. The proviso added six years later by Chapter 116, appellants

insist, should not be construed as enlarging the scope of the first sentence.[2]

*Second,* the appellants argue that a statute limiting the zoning authority of municipalities in Prince George's and Montgomery Counties, but not extending the limitation to all other municipalities in the State, violates the requirement in Art. XI-E, § 1, of the Constitution, that legislation shall apply alike to all municipalities in a class. Moreover, appellants contend that a statute applicable only to municipal corporations in Montgomery and Prince George's Counties violates § 2 of Art. XI-E by creating a classification of municipalities based upon something other than population. The classification would be based on location rather than population, with municipalities in two counties being in one class and those in all of the other counties of the State belonging to another class.

If we agreed with appellants that Chapter 116 applied only to municipalities in Montgomery and Prince George's Counties, it is doubtful that the Act would be constitutional. However, we do not agree with the appellants' interpretation. In our view, § 9 (c) in its entirety applies to all municipalities throughout the State which are subject to Art. XI-E of the Constitution. Therefore the section, including the proviso added by Chapter 116, does not violate Art. XI-E.[3]

It is a well-established principle of statutory construction that "where there are two possible constructions, and one of them makes a statute of doubtful constitutionality, courts will adopt that view of the enactment which establishes it free of fundamental objections." *State v. Petrushansky,* 183 Md. 67, 70, 36 A. 2d 533 (1944). *See also District Land v.*

---

**2.** See Wolf v. Bauereis, 72 Md. 481, 485, 19 A. 1045 (1890) ("It is said that the function of a proviso is that of limiting and qualifying the language of the statute, and not that of enlarging or extending the Act or section of which it is a part . . . ."); but *cf.,* Webb v. City of Baltimore, 179 Md. 407, 409, 19 A. 2d 704 (1941) ("It appears also that subsequent clauses should not be limited by independent precedent clauses unless the intention be clearly expressed.").

**3.** Our view of § 9 (c) renders moot the question whether the proviso added by Chapter 116 should be construed as limited by the first sentence of § 9 (c).

*Wash. S. S. C.*, 266 Md. 301, 312, 292 A. 2d 695 (1972); *Baltimore County v. Mo. Realty*, 219 Md. 155, 159, 148 A. 2d 424 (1959); *Barrett v. Clark*, 189 Md. 116, 127, 54 A. 2d 128 (1947). In the present case, not only is it "possible" to view § 9 (c) as applying to all municipalities throughout the State, but this is the plain meaning of the language employed by the Legislature. As we have stated on many occasions, "A statute should be construed according to the ordinary and natural import of the language used." *Grosvenor v. Supervisor of Assessments*, 271 Md. 232, 315 A. 2d 758 (1974); *Balto. County v. White*, 235 Md. 212, 218, 201 A. 2d 358 (1964); *Dundalk Liquor Co. v. Tawes*, 197 Md. 446, 455, 79 A. 2d 525 (1951).

The first words of § 9, in subsection (a), provide: "As used in this subtitle the term 'municipal corporation' shall include *all* cities, towns and villages, now or hereafter created under any general or special law of this State for general governmental purposes, which are subject to the provisions of Article 11E of the Constitution of Maryland . . . ." (Emphasis supplied.) No clearer definition could be devised. Subsection (c) of § 9 uses the term "municipal corporation" without any limiting language. Thus, the definition in subsection (a) applies. Moreover, subsection (c) itself begins with the language, "No municipal corporation which is subject to the provisions of Article 11E shall . . ." affect the powers of the Washington Suburban Sanitary Commission or the Maryland-National Capital Park and Planning Commission. The municipal corporations subject to the provisions of Art. XI-E are all of the municipalities in the State except Baltimore City.

The construction of § 9 (c) urged by appellants is based on the contention that, as a practical matter, only those municipalities in Montgomery and Prince George's Counties might enact legislation affecting the powers of the Washington Suburban Sanitary Commission or the Maryland-National Capital Park and Planning Commission. However, even if true, this is no reason to ignore the clear mandate of the Legislature. Even if, at the present time, there is no danger that a city outside of Montgomery and

Prince George's Counties will impair the authority of the two commissions, the General Assembly may still if it so desires prohibit cities in other counties from engaging in such action. Also, it is possible that a municipality in a county adjacent to one of those two counties where the commissions operate, could enact an ordinance affecting the authority of the commissions. Finally, the geographical areas in which the two commissions have operated have not remained static. The General Assembly has from time to time expanded those geographical areas. It is certainly possible that in the future the two commissions could conduct operations in other counties.

The legislative history of Chapter 116 lends support to the view that the General Assembly intended the statute to apply to municipalities throughout the State. Chapter 116 was first introduced as House Bill 83 at the 1971 session of the General Assembly. After passing the House, it was read for the first time in the Senate and referred to the Committee on Judicial Proceedings. Throughout this stage, the bill's title provided in part (Journal of Proceedings of the Senate of Maryland, Regular Session 1971, p. 146):

> " . . . to provide that a municipal corporation having planning and zoning authority shall assume exclusive jurisdiction over planning and zoning within an area annexed five years after the area is finally annexed by it over which the Maryland-National Capital Park and Planning Commission had jurisdiction prior to the annexation."

The Senate Judicial Proceedings Committee, however, deleted the reference in the title to the Maryland-National Capital Park and Planning Commission, and re-wrote the title as follows (Senate Journal, *supra,* p. 1227):

> "to provide that no municipal corporation annexing land may, for a period of five years following annexation, place such land in a zoning classification which permits a land use substantially different from the use for such land

specified in the current and duly adopted master plan or plan of the county or agency having planning and zoning jurisdiction over such land prior to its annexation."

The Committee's amendment was adopted, and the bill was finally enacted in that form. Senate Journal, *supra,* pp. 1260-1261, 1356, 1400, 1474-1475; Journal of Proceedings of the House of Delegates of Maryland, Regular Session 1971, pp. 1976, 2156-2157. This action, re-writing the title and deleting the reference to areas "over which the Maryland-National Capital Park and Planning Commission had jurisdiction prior to annexation," suggests a realization by the General Assembly that Art. XI-E of the Constitution required that the Act apply to all municipalities in the State. This legislative intent, disclosed by the title of Chapter 116, confirms the scope of the language of the Act itself. It is "well settled" that "the title of an act is relevant to ascertainment of its intent and purpose . . . ." *MTA v. Balto. Co. Revenue Auth.,* 267 Md. 687, 695-696, 298 A. 2d 413 (1973).

In sum, principles of statutory construction, the language of Art. 23A, § 9 as amended by Chapter 116 of the Laws of Maryland 1971, and the legislative history of the amendment, all lead to the conclusion that the enactment is a limitation upon the home rule powers of *all* municipalities subject to Art. XI-E of the Maryland Constitution. As such, the statutory provisions do not violate Art. XI-E.

*Decree affirmed.*
*Appellants to pay costs.*