882 A.2d 256

**Richard Joseph MOORE**

v.

**STATE of Maryland.**

**No. 48, Sept. Term, 2003.**

Court of Appeals of Maryland.

Sept. 7, 2005.

William E. Nolan, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for Appellant.

J. Joseph Curran, Jr., Atty. Gen. of MD (Kathryn Grill Graeff, Asst. Atty. Gen., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to decide important issues concerning the coverage of two Maryland criminal statutes.

Maryland Code (2002), § 11–207 of the Criminal Law Article, entitled "Child pornography," prohibits a person from, *inter alia,* using a computer, knowingly, to transmit, receive, etc., any information, statement, etc., "or minor's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in ... sexual conduct of or with a minor." *See* § 11–207(a)(5).[1] The first question presented in the case at bar is

---

1. Section 11–207 of the Criminal Law Article, in its entirety, states as follows:

whether § 11–207(a)(5) covers the situation where the defendant uses a computer to communicate with and arrange a

---

" § **11–207.  Child pornography.**

"(a) *Prohibited.*—A person may not:

"(1)  cause, induce, solicit, or knowingly allow a minor to engage as a subject in the production of obscene matter or a visual representation or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct;

"(2)  photograph or film a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

"(3)  use a computer to depict or describe a minor engaging in an obscene act, sadomasochistic abuse, or sexual conduct;

"(4)  knowingly promote, distribute, or possess with the intent to distribute any matter, visual representation, or performance that depicts a minor engaged as a subject in sadomasochistic abuse or sexual conduct; or

"(5)  use a computer to knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, or disseminate any notice, statement, advertisement, or minor's name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of engaging in, facilitating, encouraging, offering, or soliciting unlawful sadomasochistic abuse or sexual conduct of or with a minor.

(b) *Penalty*—A person who violates this section is guilty of a felony and on conviction is subject to:

(1)  for a first violation, imprisonment not exceeding 10 years or a fine not exceeding $25,000 or both;  and

(2)  for each subsequent violation, imprisonment not exceeding 20 years or a fine not exceeding $50,000 or both.

(c) *Evidence*—(1)(i)  This paragraph applies only if the minor's identity is unknown or the minor is outside the jurisdiction of the State.

(ii)  In an action brought under this section, the State is not required to identify or produce testimony from the minor who is depicted in the obscene matter or in any visual representation or performance that depicts the minor engaged as a subject in sadomasochistic abuse or sexual conduct.

(2)  The trier of fact may determine whether an individual who is depicted in an obscene matter, or any visual representation or performance as the subject in sadomasochistic abuse or sexual conduct, was a minor by:

(i)  observation of the matter depicting the individual;

(ii)  oral testimony by a witness to the production of the matter, representation, or performance;

(iii)  expert medical testimony;  or

(iv)  any other method authorized by an applicable provision of law or rule of evidence."

At the time the events in the present case occurred, the statute was codified as Code (1957, 1996 Repl. Vol.), Art. 27, § 419A. As there were no substantive changes in the provision when it was re-codified as part of the Criminal Law Article, we shall in this opinion refer to the current codification.

meeting with a person, whom the defendant believes to be a minor, but who in actuality is an adult undercover police officer, and where the defendant's purpose is to engage in sexual conduct with that person.

Section 3–307(a)(4) and (5) of the Criminal Law Article provides that a person may not "engage in a sexual act" or "engage in vaginal intercourse with" someone who is "14 or 15 years old," and the person "performing the sexual act" or engaging in the vaginal intercourse "is at least 21 years old." [2] The second question presented in this case is whether the crime of attempted third degree sexual offense, predicated upon either § 3–307(a)(4) or § 3–307(a)(5), covers the situation where the defendant, who is over 21 years of age, contacts and arranges to meet another person for a sexual act or vaginal intercourse, where the defendant travels to the arranged meeting place, where the defendant believes that the other person is 14 years old, but where the other person is actually an adult undercover police officer.

Both of the questions presented by this case had earlier been presented to this Court in *State v. Taylor,* 371 Md. 617, 624–629, 810 A.2d 964 (2002), but we were unable to decide the questions in that case because the trial court's judgment in *Taylor* was held to be non-appealable. In the present case,

---

**2.** Section 3–307 of the Criminal Law Article provides in pertinent part as follows:

" **§ 3–307. Sexual offense in the third degree.**

"(a) *Prohibited.*—A person may not:

\* \* \*

(4) engage in a sexual act with another if the victim is 14 or 15 years old, and the person performing the sexual act is a least 21 years old; or

(5) engage in vaginal intercourse with another if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old.

"(b) *Penalty.*—A person who violates this section is guilty of the felony of sexual offense in the third degree and on conviction is subject to imprisonment not exceeding 10 years."

These provisions were formerly codified as Art. 27, § 464B(a)(4) and (5). There were no substantive changes in the provisions upon their re-codification in the Criminal Law Article.

however, we shall be able to reach both of the statutory interpretation issues.

## I.

The defendant, Richard Joseph Moore, was indicted in the Circuit Court for Frederick County on five counts. The first count charged a violation of a subsection of the Child pornography statute, which was then Art. 27, § 419A(e), and now is codified as § 11–207(a)(5) of the Criminal Law Article.[3] Counts two through five each charged the common law offense of attempt, with the attempts involving the statutory crimes of third degree sex offense under then Art. 27, § 464B(a)(4) and (5), now codified as § 3–307(a)(4) and (5) of the Criminal Law Article. Counts two, three, four, and five were identical, charging that "Moore, on or about July 12, 2002, at Frederick County, Maryland, did unlawfully attempt to commit a sexual offense in the third degree upon a fourteen year old minor . . . ."

The defendant Moore pled "not guilty," and he was tried on counts one and two based upon an agreed statement of facts which the prosecuting attorney orally recited at the trial. The State also filed a nolle prosequi for each of counts three, four, and five.

The agreed statement of facts, with our changes representing grammatical, punctuation, and technical wording corrections, reads in pertinent part as follows:

"On July 9th of 2002, Deputy First Class Sabol, with the Frederick County Sheriff's Office, was currently assigned to

---

3. Count one alleged in pertinent part

"that Richard J. Moore, on or about July 12, 2002, at Frederick County, Maryland, unlawfully did, by means of a computer, knowingly compile, enter, transmit, make, print, publish, reproduce, cause, allow, buy, sell, receive, exchange, and disseminate a notice, statement, advertisement, minor's name, telephone number, place of residence, physical characteristic and other descriptive, or identifying information for the purpose of engaging, facilitating, encouraging, offering and soliciting unlawful sexual conduct and sadomasochistic abuse of and with a minor . . . ."

the Maryland State Police Internet Crimes Against Children Taskforce. She accessed the Internet in an undercover capacity posing as a 14–year–old minor female.

"Deputy Sabol, using her undercover screen name, accessed an Internet chatroom. Deputy Sabol, posing as an undercover minor, received an unsolicited contact by a person using the name of Runner5K.

"Runner5K engaged in a sexually explicit conversation with Deputy Sabol. Runner5K stated that he was 5 foot 10 inches tall, 168 pounds with short brown hair and hazel green eyes. During the conversation, Runner5K asked for a detailed description of the person with whom he was communicating. Deputy Sabol provided him with a description of the person including height, weight, color of hair, and eyes. Runner5K also requested the person's clothing size. He requested the age of the person, which Deputy Sabol replied was 14–years–old. Runner5K stated that he wanted to meet for sex with the 14–year–old minor who was actually Deputy Sabol.

"On 7/10/2002 Deputy Sabol accessed the internet once again in an undercover capacity, again using the same name and description of the fictitious 14–year–old female. Deputy Sabol received an unsolicited contact, that is an instant message, from someone using the name Runner10K.

"Deputy Sabol had learned earlier that the name Runner10K belonged to the same person using the name of Runner5K.

"Runner10K engaged in a sexually explicit conversation with Deputy Sabol, during which time Runner10K indicated that he understood that the person with whom he was communicating was 14 years of age.

"Runner10K stated, 'If we were going to do this we would have to be very discreet.' And, 'the best place to go would be your apartment if your mom isn't there.'

"During the course of the conversation Runner10K indicated that he also wanted to meet the person's friend, who also was described as a 14–year–old minor.

"He indicated in his chat that he wanted the two 14–year-old minors to engage in oral sex on him when they met.

"Runner10K stated that he wanted to come to Waverly Drive and Key Parkway in Frederick County, Maryland, for the oral sex with the minors, one of whom Deputy Sabol was posing as.

"Runner10K stated that he would know around 14:00 hours if he could meet them. Around 14:00 hours, Runner10K stated that he could not meet on 7/10/2002.

"On 7/12/2002 Deputy Sabol once again went online in an undercover capacity, and was contacted by Runner5K.

"Runner5K engaged in a sexually explicit conversation with Deputy Sabol, who was again posing undercover as a minor on the Internet. Runner5K asked for a detailed description of both of the minors, and stated he wanted to engage in oral sex with both minors, and then to have oral sex performed on him.

"Runner5K stated that he wanted to have sex with both minors at the one minor's residence located on Waverly Drive and Key Parkway in Frederick County, Maryland. He stated that he would meet the minors at 15:00 hours on 7/12/2002. He stated that he would be operating a black jeep Cherokee, and wearing blue jeans, and a red striped polo shirt. He stated that his name was Rich.

"Your Honor, they did pull the information from the Internet account, and that Internet account, which Deputy Sabol had been communicating with, did belong to a Richard J. Moore.

"At 14:55 hours, members of the Maryland State ICAC taskforce observed a black jeep Cherokee enter the parking space at the pre-determined location. The ICAC members made contact with the operator, identified him through his license as Richard Joseph Moore, the same person whom they had previously identified as having the Internet account with which they were communicating. He was taken into custody, advised of his rights, and agreed to give a written statement to Deputy Sabol.

"Moore then stated that he drove from his work in Reston, Virginia, to Frederick, Maryland, to meet two 14–year–old minors for oral sex and vaginal sex with both girls. He stated that he met them on the Internet, and asked them if he could meet them for sex.

"That would be the agreed statement of facts, Your Honor."

The Circuit Court, based on the above-quoted agreed statement of facts, denied a motion for judgment of acquittal and found that the defendant Moore was guilty under both count one and count two of the indictment. The court imposed a three-year sentence for the "child pornography conviction" charged in count one, and suspended the entire sentence except for time served. The court sentenced Moore to time served for the attempted third degree sex offense conviction under count two. Moore appealed to the Court of Special Appeals, and, prior to argument in the intermediate appellate court, this Court issued a writ of certiorari. *Moore v. State,* 376 Md. 543, 831 A.2d 3 (2003)

## II.

■ We shall first address the question of whether § 11–207 of the Criminal Law Article, entitled "Child pornography," covers in subsection (a)(5) the situation presented by the agreed-upon facts of this case. As previously mentioned, the specific issue is whether the statutory provision is limited to the circumstance where the victim is actually a minor, or whether it more broadly covers computer contact with an adult "victim" posing as a fictitious minor.

## A.

The State's argument that § 11–207(a)(5) covers computer communications with an adult, whom the defendant believes to be a minor, is essentially based upon the statutory language in the last clause of subsection (a)(5) which prohibits computer communications and other activities "*for the purpose* of engaging in ... sexual conduct of or with a minor." (Emphasis

added). The State thus argues (brief at 21, emphasis in original):

> "Maryland's statute criminalizes a defendant's actions if the *purpose,* or intent, is to solicit unlawful sexual conduct with a child, even if the person believed to be a child is actually an undercover officer. Here, the agreed statement of facts showed that Moore believed [that] the intended victim was a minor, and he used a computer to transmit and receive statements for the purpose of soliciting unlawful sexual activity with a minor."

According to the State, if a defendant is seeking sexual activity with a person whom the defendant *believes* is a minor, then the defendant's *purpose,* within the meaning of the statute, is to have sexual activity with a minor.

The defendant, in arguing that § 11–207(a)(5) only encompasses computer communications with a person who is actually a minor, and does not cover communications with an adult whom the defendant believes to be a minor or with a fictitious person, also relies on the statutory language, as well as on the legislative history of the provision and subsequent actions by the General Assembly.

In our view, § 11–207 in its entirety, including subsection (a)(5), is a statute prohibiting various types of actions and conduct where the victim is an actual minor. It was not intended to prohibit actions or conduct where the "victim" was an adult or a fictitious person, even if the defendant believed that such person was a minor. Moreover, several attempts in the General Assembly to broaden subsection (a)(5), so as to include an adult whom the defendant *believes* is a minor, have been unsuccessful.

### B.

Section 1–101(g) of the Criminal Law Article states that, "in this article," the word " 'Minor' means an individual under the age of 18 years." Accordingly, the final clause of § 11–207(a)(5), relied on by the State, must be read as prohibiting the use of a computer to communicate, etc., with a person "for

the purpose of engaging in ... sexual conduct ... with" "an individual under the age of 18 years." While the State argues that this was the defendant's "purpose" because he believed Deputy Sabol to be under 18, it is equally arguable that the defendant's "purpose" was to engage in sexual acts and intercourse with the person with whom he was communicating, *i.e.*, Deputy Sabol, who in fact happened to be over 18. If the last clause of subsection (a)(5) stood alone, it would at the very least be ambiguous. Under this circumstance, the principle would be applicable that "[c]riminal statutes must be strictly construed in favor of the defendant to prevent courts from extending punishment to cases not plainly within the language of the statute." *Farris v. State,* 351 Md. 24, 29, 716 A.2d 237, 240 (1998). *See also, e.g., Tapscott v. State,* 343 Md. 650, 654, 684 A.2d 439, 441 (1996) ("As [the petitioner] correctly notes, criminal statutes must be strictly construed in favor of the defendant"); *State v. Purcell,* 342 Md. 214, 229, 674 A.2d 936, 944 (1996) (" 'Generally, in construing penal statutes we employ the "rule of lenity," that is, statutes are strictly construed, in favor of the accused,' " quoting *State v. Kennedy,* 320 Md. 749, 754, 580 A.2d 193, 195 (1990)); *Jones v. State,* 304 Md. 216, 220, 498 A.2d 622, 624 (1985) ("Penal statutes, as a general rule, are strictly construed").

Moreover, the last clause of § 11–207(a)(5) does not stand alone. This Court has often emphasized that " 'statutory language is not read in isolation, but in light of the full context in which [it] appear[s],' " *In re Anthony R.,* 362 Md. 51, 57, 763 A.2d 136, 140 (2000), quoting *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (some internal quotation marks omitted). Viewing the word "minor" at the end of subsection (a)(5) in the context of the entire § 11–207, it seems clear that the Legislature meant an actual person who is under the age of 18 years.

Even if subsection (a)(5) is read without reference to the rest of § 11–207, the subsection seems to refer to an actual minor. The activities at which subsection (a)(5) is aimed, listed prior to the clause setting forth the "purpose" of such activities, include knowing communication or dissemination of

any *"minor's* name, telephone number, place of residence, physical characteristics, or other descriptive or identifying information for the purpose of" etc. (Emphasis added). The word "minor" in this context clearly refers to a person under the age of 18, as there is no language in the clause arguably making the word cover an adult whom the defendant believes to be a minor. Consequently, under the State's argument, the word "minor" used twice in subsection (a)(5) would have two meanings, with the first meaning being limited to a person who is under 18 and the second meaning including an adult believed by the defendant to be under 18. The State's interpretation of subsection (a)(5) would violate the principle that "the legislature is presumed to use words consistently throughout a statute." *Brown v. State,* 311 Md. 426, 435, 535 A.2d 485, 489 (1988).

In addition to being used twice in subsection (a)(5), the word "minor" is employed in subsections (a)(1), (a)(2), (a)(3), (a)(4), (c)(1), and (c)(2) of § 11–207. As used in all of these subsections, the word clearly means a person under the age of 18. It seems highly unlikely that, in one relatively short section of the Criminal Code, the same word would be used eleven times to signify a real person actually under the age of 18, but used one time to encompass an adult believed to be a minor or a fictitious person, at least in the absence of express language so stating.

Furthermore, examining § 11–207 as a whole confirms that the word "minor" throughout the statute means a real person actually under the age of 18. Although some parts of the statute may have been enacted at different times, the entire § 11–207 is an integrated, complete statute designed to protect actual minors. The "prohibited" activities, set forth in five separate paragraphs of subsection (a), are all in the disjunctive. For example, the prohibited activity with respect to a "minor" encompassed by subsection (a)(4) is separated from the prohibited activity with respect to a minor encompassed by subsection (a)(5) by the word "or." In light of subsection (b), § 11–207 creates a single felony, which can be committed against a "minor" in numerous alternative ways.

The victim is always the same, *i.e.*, the minor, and the alternative elements concern the different activities or conduct with regard to that victim. Nothing in the wording of the statute suggests that the General Assembly intended that there be alternative classes of victims.

Subsection (c) of § 11–207, dealing with evidence and trial procedure where the victim's identity is unknown or the victim is outside of the State's jurisdiction, applies to subsection (a)(5) as well as subsections (a)(1) through (a)(4). It is clear, however, that the term "minor" as used in five places in subsection (c) is referring to an actual minor. Subsection (c)(2) goes on to prescribe the different types of evidence which the trier of fact may rely upon in order to determine whether the victim was actually a minor. There would be no reason for making this provision applicable to subsection (a)(5) if the State's interpretation of that subsection were correct. Subsection (c)(2) underscores the General Assembly's intent that § 11–207, in its entirety, was designed to protect real persons who are actual "minors" as defined in the Criminal Code.

## C.

This interpretation of § 11–207(a)(5) is confirmed by the legislative history of the subsection. What is now § 11–207(a)(5) of the Criminal Law Article, and prior to 2002 was § 419A(e) of Art. 27, was enacted by Ch. 443 of the Acts of 1996, contained in III *Laws of Maryland 1996* at 2749–2751. In addition to adding new subsection (e) to § 419A, Ch. 443 repealed and reenacted with amendments the entire § 419A. The title of the enactment began by describing it as "AN ACT concerning *Child* Pornography—Computers," and went on, *inter alia*, to describe the statute as one "prohibiting a person from using a computer to . . . exchange, transmit, [or] disseminate . . . certain data *relating to minors* . . . ." (emphasis added). The title of Ch. 443 continued by describing it as an act "prohibiting certain computer operated depictions of certain conduct of or with a *minor*; . . . and generally relating to computers and *child* pornography." (Emphasis added). Con-

sequently, the title of Ch. 443 reinforces the view that the Legislature intended to prohibit conduct involving actual minors or children. In numerous cases, this Court has held that the title of an enactment is an important indication of the General Assembly's intent. *See, e.g., Rockville v. Rylyns,* 372 Md. 514, 555, 814 A.2d 469, 493 (2002) ("It is 'well settled' that 'the title of an act is relevant to ascertainment of its intent and purpose,' ") quoting *MTA v. Balto. Co. Revenue Authority,* 267 Md. 687, 695–696, 298 A.2d 413, 418 (1973); *Board v. Stephans,* 286 Md. 384, 395, 408 A.2d 1017, 1022 (1979) (The purpose of the title "is to inform the members of the General Assembly and the public of the nature of the proposed legislation"); *State Farm v. Ins. Comm'r,* 283 Md. 663, 674 n. 3, 392 A.2d 1114, 1120 n. 3 (1978) ("The title of an act is relevant in ascertaining the legislative intent and purpose"); *Bd. of Co. Comm'rs v. Colgan,* 274 Md. 193, 200, 334 A.2d 89, 93 (1975) ("Further evidence that this section does not [support appellant's position] is made clear by its title"); *City of Gaithersburg v. Mont. Co.,* 271 Md. 505, 513, 318 A.2d 509, 513 (1974) ("This legislative intent, disclosed by the title of Chapter 116, confirms the scope of the language of the Act itself").

The 1996 reenacted subsection (a) of § 419A stated: "In this section *'minor'* means an individual under 18 years of age." (Emphasis added). Each of the other subsections of § 419A were reenacted with amendments, and each contained the word "minor." It is very clear that the title and body of the statute, as reenacted with amendments and additions by Ch. 443 of the Acts of 1996, were referring to an actual person under the age of 18 and not a fictitious person or an adult believed by the defendant to be under 18.

Nothing in the several legislative reports concerning the bill which became Ch. 443 of the Acts of 1996 suggests that any part of the statute was intended to apply when the "victim" was an adult or a fictitious person believed by the defendant to be under the age of 18.[4] On the contrary, such legislative

---

4. We have consistently taken the position that legislative reports, including Bill Analysis reports, Floor reports, Fiscal Notes, reports by

history confirms that the General Assembly in Ch. 443 was referring to an actual minor.

The bill which became Ch. 443 was House Bill (HB) 305 of the 1996 session. The Bill Analysis report on HB 305 by the House of Delegates' Judiciary Committee was headed *"Child Pornography—Computers"* (emphasis added), and the report consistently referred to the "victim" as a "minor" or "any minor." The Bill Analysis report on HB 305, by the Senate Judicial Proceedings Committee, was similarly headed "Child Pornography—Computers," and it also consistently referred to actual "minors." The Senate Judicial Proceedings Committee's Floor report was to the same effect.

The Fiscal Note concerning HB 305, prepared by the General Assembly's Department of Fiscal Services, described the new § 419A(e) as follows (emphasis added):

> "The bill also prohibits a person from using a computer to disseminate or receive certain information *about a minor* for the purpose of engaging, facilitating, encouraging, offering, or soliciting unlawful sexual conduct...."

Thus, a "purpose" of unlawful sexual conduct with a minor was not deemed sufficient. The use of the computer to disseminate or receive information contemplated information "about a minor."

---

study or advisory committees, and other material concerning General Assembly bills, found in the Department of Legislative Services' bill files, or, earlier, in the Department of Legislative Reference's bill files, may be considered in determining legislative intent. *See, e.g., Empire v. Hardy,* 386 Md. 628, 637, 873 A.2d 1187, 1192 (2005); *Bienkowski v. Brooks,* 386 Md. 516, 542–543, 873 A.2d 1122, 1137–1138 (2005); *Comptroller v. Phillips,* 384 Md. 583, 600–601, 865 A.2d 590, 599–600 (2005); *Collins v. State,* 383 Md. 684, 695–696, 861 A.2d 727, 734 (2004); *Nesbit v. GEICO,* 382 Md. 65, 77, 854 A.2d 879, 886 (2004); *In re Anthony R.,* 362 Md. 51, 58, 763 A.2d 136, 140 (2000); *Jones v. State,* 357 Md. 141, 160–163, 742 A.2d 493, 503–505 (1999); *Martin v. Howard County,* 349 Md. 469, 490–491, 709 A.2d 125, 136 (1998); *Montgomery County v. L. D.,* 349 Md. 239, 257, 267–274, 707 A.2d 1331, 1340, 1345–1348 (1998); *Armstead v. State,* 342 Md. 38, 60, 673 A.2d 221, 231 (1996); *United States v. Streidel,* 329 Md. 533, 546–548, 620 A.2d 905, 912–913(199); *Schochet v. State,* 320 Md. 714, 734–735, 580 A.2d 176, 186 (1990); *State v. Frazier,* 298 Md. 422, 458–461, 470 A.2d 1269, 1288–1289 (1984).

After HB 305 was passed by both the House of Delegates and the Senate, Attorney General Curran on May 3, 1996, signed and sent to the Governor a three-page letter approving the bill for constitutionality. The letter at one point stated (p. 2, emphasis added):

"The majority of the provisions of the bill are clearly constitutional. It is established that the State may prohibit dissemination of material depicting sexual conduct by minors even though the material is not obscene. [Citation omitted]. *It is also well established that speech directed at the accomplishment of an illegal act is not protected by the First Amendment.* [Citations omitted]."

Computer communications with an adult, for the purpose of a sexual liaison with an adult or with a fictitious person, however, are *not* ordinarily communications "directed at the accomplishment of an illegal act."

In sum, there is no indication or hint in the legislative history of Ch. 443 of the Acts of 1996 supporting the view that the General Assembly contemplated anything broader than conduct aimed at or involving an actual minor.

### D.

There have been several attempts in the General Assembly to amend former Art. 27, § 419A, or more recently § 11–207 of the Criminal Law Article, to prohibit computer communications with "someone believed to be a minor" for the purpose of engaging in sexual conduct. None of those attempts has been successful.

Thus, House Bill 584 of the 2000 regular session of the General Assembly, introduced by the Chairman of the House Judiciary Committee and two other delegates, would have, *inter alia,* added a new subsection (f)(1) to Art. 27, § 419A, providing as follows (emphasis added):

"EVERY PERSON WHO, BY MEANS OF COMPUTER, COMMUNICATES WITH A MINOR *OR SOMEONE BELIEVED TO BE A MINOR* FOR THE PURPOSE OF ENGAGING IN SEXUALLY EXPLICIT CONVERSATION TO SEDUCE, SOLICIT, LURE, OR ENTICE A MINOR *OR SOMEONE BELIEVED*

*TO BE A MINOR* TO ENGAGE IN ANY SEXUAL CONDUCT, SEXUAL EX-
CITEMENT, OR SADOMASOCHISTIC ABUSE AS DEFINED IN § 416A OF
THIS ARTICLE IS SUBJECT TO THE PENALTY PROVIDED IN SUBSEC-
TION (G) OF THIS SECTION."

House Bill 584 had apparently been a departmental bill recom-
mended by the "Internet–Based Crime Committee" of the
"Maryland Information Technology Board," an agency within
the Maryland Department of Budget and Management. *See*
the Bill Analysis report on House Bill 584 by the House
Judiciary Committee, at 2. The Department of Legislative
Services' Fiscal Note which accompanied House Bill 584 stat-
ed:

> **"Current Law:** The existing prohibition against using a
> computer for illegally 'engaging, facilitating, encouraging,
> offering, or soliciting' a minor refers only to unlawful sexual
> conduct or sadomasochistic abuse, and does not include
> circumstances involving 'someone believed to be a minor.'"

House Bill 584, however, received an unfavorable report from
the House Judiciary Committee and was not enacted. *See* the
Floor report on Senate Bill 409, 2003 regular session of the
General Assembly, by the Senate Judicial Proceedings Com-
mittee, at 5, setting forth the history of bills at earlier
sessions.

House Bill 202 of the 2001 regular session of the General
Assembly was also a departmental bill, requested by the
Maryland State Police, and introduced by the Chairman of the
House Judiciary Committee and another delegate. House Bill
202 would also have extended the prohibition in Art. 27,
§ 419(e), to a computer communication with "someone be-
lieved to be a minor." The Bill Analysis report on House Bill
202 by the House Judiciary Committee, at 2, stated in perti-
nent part:

> "House Bill 202 is a reintroduction of House Bill 584 of 2000
> which was recommended by the Maryland Information
> Technology Board (ITB). The General Assembly created
> the ITB in 1994 in the Department of Budget and Manage-
> ment.

\* \* \*

"In January 2000, the ITB issued a report titled 'Internet Policy Recommendations,' containing recommendations from five ITB committees: E–Commerce, Emerging Technology, Privacy, Internet–Based Crime, and Health Care Industry. The Internet–Based Crime Committee of the ITB recommended several bills to address computer crimes, including House Bill 584 of 2000. That bill failed in the House Judiciary Committee.

"House Bill 202 is nearly identical to House Bill 584 of 2000. The only difference is the addition of the word 'unlawful' modifying the phrase 'sexual conduct, sexual excitement, or sadomasochistic abuse' on page 2, in line 16."

The Legislative Committee and the Committee on Criminal Law and Procedure of the Maryland Judicial Conference supported House Bill 202. *See* Memorandum to the House Judiciary Committee from Elizabeth Buckler Veronis, staff person for the two Judicial Conference Committees, dated February 8, 2001, contained in the Department of Legislative Services' file on House Bill 202. Nonetheless, like its predecessor at the prior legislative session, House Bill 202 received an unfavorable report by the House Judiciary Committee and was not enacted.

At the 2002 regular session of the General Assembly, House Bill 99, which was similar to House Bill 584 of the 2000 session and House Bill 201 of the 2001 session, was introduced. This bill, however, was later withdrawn. *See* the Floor report on Senate Bill 409, 2003 regular session of the General Assembly, by the Senate Judicial Proceedings Committee, at 5.

Two similar bills were introduced at the 2003 regular session of the General Assembly, one being Senate Bill 409 and the other being House Bill 540. By 2003, former Art. 27, § 419A, had been recodified as § 11–207 of the Criminal Law Article. Like the earlier bills discussed above, both bills introduced at the 2003 session would have added a new subsection to the statute (now § 11–207), extending the prohibition to a person's computer communications with "someone

believed by the person to be a minor for the purpose" of engaging "in unlawful sexual conduct" with "someone believed by the person to be a minor."

The Senate Judicial Proceedings Committee's Floor report on Senate Bill 409 of the 2003 session pointed out that "[t]he existing prohibition against using a computer for illegally 'engaging, facilitating, encouraging, offering, or soliciting' a minor refers only to unlawful sexual conduct ... and does not include circumstances involving 'someone believed to be a minor.'" (*Id.* at 2). The Senate Floor report discussed the Circuit Court's dismissal of the charges in *State v. Taylor, supra,* 371 Md. 617, 810 A.2d 964, and stated that "the dismissal of charges by the circuit court was upheld" by the Court of Appeals. (*Id.* at 5).[5]

The Department of Legislative Services' "Fiscal and Policy Note" on Senate Bill 409 of the 2003 session was similar to the Floor report, pointing out that the existing prohibition in § 11–207, as well as the prohibition in § 3–307, "does not include circumstances involving 'someone believed to be a minor.'"[6] Senate Bill 409 received a favorable report by the Senate Judicial Proceedings Committee and was passed by the Senate with a vote of 47 in favor and 0 opposed. Nevertheless, like the previous attempts to broaden the statute's coverage, both Senate Bill 409 and House Bill 540 of the 2003 session died in the House of Delegates.

---

**5.** The Senate report did go on to point out that the "upholding" of the Circuit Court's judgment was on double jeopardy grounds. On the other hand, while observing that the Court of Appeals in *Taylor* did not reach the "legal impossibility" issue under § 3–307(a)(4) and (5) of the Criminal Law Article, the Senate report did not indicate that the existing law was unresolved as to any other issue under either § 11–207 or § 3–307. Instead, the report clearly reflected the Committee's view that existing § 11–207 did not encompass an adult or fictitious "victim" believed by the defendant to be a minor.

**6.** The discussion of the *Taylor* case in the "Fiscal and Policy Note" simply stated that the Court of Appeals "upheld" the dismissal of the charges. There was no discussion of the grounds for the Court of Appeals' decision.

A similar bill, House Bill 1331, was introduced at the 2004 regular session of the General Assembly. It received a "unanimous" unfavorable report by the House Judiciary Committee and was then withdrawn by the sponsor.

Although the failure of a single bill in the General Assembly may be due to many reasons, and thus is not always a good indication of the Legislature's intent, under some circumstances the failure to enact legislation is persuasive evidence of legislative intent. *See, e.g., Lee v. Cline,* 384 Md. 245, 255–256, 863 A.2d 297, 303–304 (2004); *Arundel Corp. v. Marie,* 383 Md. 489, 504, 860 A.2d 886, 895 (2004) ("The Legislature [has] declined invitations to modify the rule as [appellant] wishes"); *Stearman v. State Farm,* 381 Md. 436, 455, 849 A.2d 539, 550–551 (2004) ("The refusal of the Legislature to act to change a [statute] . . . provides . . . support for the Court to exercise restraint and refuse to step in and make the change"); *In re Anthony R., supra,* 362 Md. at 65–67, 763 A.2d at 144–145 (2000); *State v. Sowell,* 353 Md. 713, 723–724, 728 A.2d 712, 717–718 (1999) ("We have recognized that the General Assembly's failure to amend . . . sometimes reflects its desired public policy"); *State v. Bell,* 351 Md. 709, 723, 720 A.2d 311, 318 (1998) ("Therefore, by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend" to adopt the result being urged); *State v. Frazier,* 298 Md. 422, 459, 470 A.2d 1269, 1288 (1984) ("All of these proposals [supporting different views of a statute advocated by the parties] were rejected by the General Assembly").

Legislative inaction is very significant where bills have repeatedly been introduced in the General Assembly to accomplish a particular result, and where the General Assembly has persistently refused to enact such bills. *See, e.g., Arundel Corp. v. Marie, supra,* 383 Md. at 502–504, 860 A.2d at 894–896; *Stearman v. State Farm, supra,* 381 Md. at 455, 849 A.2d at 551 ("Every year since 2000, legislators have introduced bills in the General Assembly that would" accomplish what the appellant urges, but "[n]one of these bills were enacted"); *Bozman v. Bozman,* 376 Md. 461, 492, 830 A.2d 450, 469

(2003), quoting *Boblitz v. Boblitz,* 296 Md. 242, 274, 462 A.2d 506, 521 (1983) (The Court will decline to adopt a particular position " 'where the Legislature repeatedly had rejected efforts to achieve legislatively that which we were asked to grant judicially' "); *Halliday v. Sturm,* 368 Md. 186, 209, 792 A.2d 1145, 1159 (2002) (The Court refused to adopt positions "that have been presented on several occasions to the General Assembly" and "[s]o far, the Legislature has chosen not" to adopt them); *Harrison v. Mont. Bd. of Educ.,* 295 Md. 442, 462, 456 A.2d 894, 904 (1983) ("It is thus important in the present case to note that in the period from 1966 through 1982, the General Assembly considered a total of twenty-one bills seeking [to adopt the appellant's position]. . . . None of these bills was enacted. Although not conclusive, the legislature's action in rejecting the proposed change is indicative of [its] intention"); *Kline v. Ansell,* 287 Md. 585, 590, 414 A.2d 929, 932 (1980); *Demory Brothers v. Bd. of Public Works,* 273 Md. 320, 326, 329 A.2d 674, 677 (1974).

As pointed out in the above-cited cases, the General Assembly's repeated refusal to enact bills, which would have adopted a party's particular view of the law, is strong evidence of legislative intent. At least six bills filed in the 2000, 2001, 2002, 2003, and 2004 sessions of the General Assembly would have adopted the State's view of former § 419A and present § 11–207. None of these bills was enacted. The State is now asking this Court to adopt a strained interpretation of § 11–207, thereby accomplishing what the General Assembly has refused to do. We decline to do so.

Neither the statutory language, nor the legislative history, nor subsequent legislative actions, support the State's position that § 11–207 covers the situation presented by the instant case.

### III.

As previously noted, *supra* n. 2, § 3–307(a)(4) and (5) of the Criminal Law Article, entitled "Sexual offense in the third degree," prohibits a person who "is at least 21 years old"

from engaging in a "sexual act" or "vaginal intercourse with another if the victim is 14 or 15 years old...." Count two of the indictment against the defendant Richard Joseph Moore charged that Moore "at Frederick County, Maryland, did unlawfully attempt to commit a sexual offense in the third degree upon a fourteen year old minor...."

Paralleling its theory under § 11–207 of the Criminal Law Article, the State contends that, because Moore's purpose or intent was "to engage in unlawful sexual conduct with a minor," and because, according to the State, he "took a substantial step towards commission of the crime, he can be convicted of attempt, even if the person he thought was a minor was an undercover adult police officer." (State's brief at 23, 25–26).

The defendant advances several alternative arguments against this theory, including the contention that a defendant's knowledge of the "victim's" age "is not an element of" the crime charged, that the offense under § 3–307(a)(4) and (5) is "a strict liability offense" and crimes not involving intent "generally fall outside the scope of attempt," that the agreed statement of facts failed to show "a substantial step that goes beyond preparation and toward completion of the crime," that the defense of "legal impossibility" is applicable to the charge, that the crime of "attempt" is a lesser included offense of the consummated crime but "the State's reasoning would result in a greater or more culpable mental state for the lesser crime of attempt," etc. (Defendant's brief at 19–27, reply brief at 7).

Preliminarily, it is questionable whether count two of the indictment even covered the State's theory of the case. Count two flatly charged that the defendant, in Frederick County, "did unlawfully attempt to commit a sexual offense in the third degree *upon a fourteen year old minor.*" (Emphasis added). Under the agreed statement of facts, there was no evidence of a fourteen year old minor present at the location in Frederick County or even a fourteen year old ever involved in the case. The language of count two may simply not cover an adult or fictitious person believed by the defendant to be a minor.

Nevertheless, assuming *arguendo* that count two is sufficient to embrace the State's theory, we agree with the defendant that the crime of an attempted third degree sexual offense under the common law and under § 3–307(a)(4) and (5), does not cover the situation presented by this case. In reaching our decision, however, we need not and shall not decide some of the issues raised by the defendant. Specifically, we shall not reach either the defendant's argument that there was no "substantial step that goes beyond preparation" or his argument based on "legal impossibility."

### A.

In *Walker v. State*, 363 Md. 253, 256, 261, 768 A.2d 631, 633, 635 (2001), a majority of the Court flatly held that the offense under former Art. 27, § 464 B(a)(5), now codified as § 3–307(a)(5) of the Criminal Law Article, was a " 'strict' criminal liability" offense with respect to the defendant's knowledge of the "victim's" age, that the offense had no "*mens rea* element" in this regard, and that "the availability of a defense of reasonable mistake of age cannot be read into the carnal knowledge between a fourteen or fifteen year old victim and a defendant who is age twenty-one or older." Under the *Walker* opinion, the same holding would apply to the offense under § 3–307(a)(4) of the Criminal Law Article. *See also Owens v. State*, 352 Md. 663, 681, 685, 690, 724 A.2d 43, 52, 54, 56 *cert. denied*, 527 U.S. 1012, 119 S.Ct. 2354, 144 L.Ed.2d 250 (1999) (Offense under former Art. 27, § 463(a)(3), is a "strict liability" offense "that dispenses with any mens rea requirement"); *Garnett v. State*, 332 Md. 571, 584–585, 632 A.2d 797 (1993) (Former Art. 27, § 463, "defines a strict liability offense that does not require the State to prove *mens rea*").

In *Lane v. State*, 348 Md. 272, 283–284, 703 A.2d 180, 186 (1997), Judge Wilner for the Court reviewed some of the principles underlying the crime of attempt (footnote omitted, emphasis added):

"By Maryland common law, the attempt to commit a crime is, itself, a separate crime—a misdemeanor. As we

pointed out in *Cox v. State*, 311 Md. 326, 330–31, 534 A.2d 1333, 1335 (1988), attempt 'is an adjunct crime, it cannot exist by itself, but only in connection with another crime,' and it thus 'expands and contracts and is redefined commensurately with the substantive offense.' *See also Hardy v. State*, 301 Md. 124, 482 A.2d 474 (1984). Subject to some exceptions, common law attempt has been held applicable to common law crimes and to a number of statutory offenses. *Bruce v. State*, 317 Md. 642, 645, 566 A.2d 103, 104 (1989). *There are, however, at least two categories of substantive crimes, to which criminal attempt has been held inapplicable. The first consists of crimes that do not require at least a general criminal intent. Cox v. State, supra,* 311 Md. at 331, 534 A.2d at 1335: 'There is an exception, however, to the general rule that attempt applies to all offenses. *Crimes that do not involve intent to do a criminal act generally fall outside the scope of the crime of attempt.* If there is no intent to do a wrongful act, then usually there is no crime of attempt.' The second category consists of substantive crimes that are, themselves, in the nature of attempts. Simple assault is often cited as an example. Although we need not decide the matter here, there may be other crimes as well that may not be suitable for serving as the basis of a criminal attempt."

*See also, e.g., Bruce v. State*, 317 Md. 642, 646, 566 A.2d 103, 105 (1989) ("Because a conviction for felony murder requires no ... intent to kill, it follows that ... attempted felony murder is not a crime in Maryland"); *Cox v. State*, 311 Md. 326, 332, 534 A.2d 1333, 1336 (1988) (" '[S]o long as the crime of attempt is deemed to require an intent-type of mental state, there can be no such thing as an attempt to commit criminal negligence involuntary manslaughter' ").

Since the offense under § 3–307(a)(4) and (5) has no intent element or *mens rea* element with regard to the "victim's" age, it follows that, absent a change in the statute, there can be no crime of attempt such as charged in the present indictment. The fact that the defendant in the case actually had an intent to engage in sexual activity with a fourteen year

old person does not in itself create a crime where there is no such crime of attempted third degree sexual offense under the present statutory scheme and common law principles.

### B.

Other aspects of the common law crime of attempt militate against the State's theory.

Prior to 1976, there was a degree of confusion concerning the nature of attempt under Maryland common law. Language in a few of this Court's earlier opinions indicated that the offense of attempt was entirely distinct from the consummated offense and contained an additional element, namely failure to consummate the crime. Under this view, a defendant could not be convicted of attempt if the evidence disclosed a consummated crime.

Beginning with *Lightfoot v. State,* 278 Md. 231, 360 A.2d 426 (1976), however, this Court has held, in accordance with the majority of American jurisdictions, that an attempt is a lesser included offense of the consummated crime, that the elements of attempt are contained in the consummated crime, and that only the consummated crime has an additional or distinct element. *See, e.g., Skrivanek v. State,* 356 Md. 270, 281–283, 739 A.2d 12, 18–19 (1999) (Upon a charge of the consummated offense, a defendant can be convicted of the lesser included offense of attempt, and "the elements of attempt cannot be considered without considering the elements of the consummated crime"); *Grill v. State,* 337 Md. 91, 94, 651 A.2d 856, 857 (1995); *Townes v. State,* 314 Md. 71, 76, 548 A.2d 832, 834 (1988) (" '[A]ttempt is a lower ... degree of the [consummated] offense because it is a part of it. It is not something separate and distinct' "); *Hardy v. State,* 301 Md. 124, 139, 482 A.2d 474, 482 (Attempt is a lesser "degree" offense which "expands and contracts and is redefined commensurate with the substantive offense").

The State's theory in the present case, however, would make attempt a distinct offense, containing an element which is not contained in the consummated offense. Attempt would

no longer be a lesser included offense. The State would insert a *mens rea* element into attempted third degree sexual offense under § 3–307(a)(4) and (5) which is not contained in the statutory consummated offense. That element would be the defendant's *belief* that the person with whom the defendant was communicating was fourteen or fifteen years old. Such *mens rea* is not part of the statute. Under § 3–307(a)(4) and (5), a defendant may reasonably believe that the person with whom he is engaging in sexual activity is an adult policewoman, but if she turns out to be a fifteen year old student, the defendant will be guilty under the statute. On the other hand, a defendant may believe that the person with whom he is engaging in sexual activity is a fifteen year old student, but if the "victim" turns out to be an adult, the defendant will not be guilty of violating § 3–307(a)(4) and (5) regardless of his belief. Belief as to age is simply irrelevant under § 3–307(a)(4) and (5). The State would, nevertheless, make belief as to age an element of attempt, thereby making attempt a wholly distinct offense. This would be directly contrary to our cases delineating the nature of attempt.

*JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY REVERSED AND CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO ENTER JUDGMENTS OF ACQUITTAL. COSTS TO BE PAID BY FREDERICK COUNTY.*

BATTAGLIA, J., Concurs.

BATTAGLIA, Judge, concurring.

I concur in the opinion and judgment. I feel compelled to write separately because of my dismay at the outcome of this case. The majority is correct in its interpretation of the language of Section 11–207 of the Criminal Law Article to encompass only those acts involving individuals under the age of 18 years, as defined in Section 1–101(g) of the Criminal Law Article. Because of the limitation inherent in the language of the statute, law enforcement is deprived of a powerful tool in its fight to protect our children from online predators. There-

fore, I would urge the General Assembly to reconsider revising the language of Section 11–207 to include those scenarios where the defendant believed he was communicating identifying information about a minor. A slight change in the provision of the statute could enable law enforcement to prevent future victimization of children.

Title 18, Section 2422 of the United States Code governing federal law enforcement provides:

(b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engages in prostitution or any sexual activity for which any person can be changed with a criminal offense, *or attempts to do so,* shall be fined under this title and imprisoned not less that 5 years and not more than 30 years.

18 U.S.C. § 2422(b) (emphasis added). The phrase "or attempts to do so" has been interpreted by the federal courts as permitting the prosecution of an individual under the statute in situations in which a law enforcement officer "poses" as a minor. *See United States v. Powell,* 1 F.Supp.2d 1419 (N.D.Ala.1998) (holding that the mere fact that the alleged victims were in fact not persons under the age of eighteen did not preclude conviction for the use of means of interstate commerce in attempting sexual contact with minors).

Alternatively, the General Assembly could consider adding language to Section 11–207(a)(5) expanding the scope of the statute to include the use of the Internet to disseminate identifying information for the purpose of engaging in sexual conduct with a minor, *or a person believed to be a minor.* This is the language contained in the computer pornography and child exploitation statute in Florida, which was determined to be sufficient to permit conviction where a law enforcement officer posed as a minor in an online chat room. *See Karwoski v. State,* 867 So.2d 486 (Fla.Dist.Ct.App.2004) (finding that sufficient evidence supported conviction for com-

puter child exploitation, even though purported victim was actually an undercover police officer).

Therefore, because of the consequences of our decision in the present case, I write separately to urge the General Assembly to act swiftly to enact language permitting law enforcement to deter those who prey upon our children.[1]

---

1. As the majority notes, although the General Assembly has not amended Section 11-207 of the Criminal Law Article to apply to a scenario such as that in the present case, it has enacted Section 3-324 of the Criminal Law Article. See Md. Code (2002, 2005 Cum.Supp.), Sec. 3-324 of the Criminal Law Article. The language of the Section 3-324 does not appear as broad as the federal and Florida statutes.