# GORDON ET UX. *v.* COMMISSIONERS OF ST. MICHAELS ET AL.

[No. 1 (Adv.), September Term, 1976.]

*Decided July 12, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and reargued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ., and J. HAROLD GRADY, Associate Judge of the Eighth Judicial Circuit, specially assigned.

Argued and reargued by *Nancy E. Paige*, with whom were *David P. Gordon* and *Donald N. Rothman* on the brief, for appellants.

Argued by *L. Clark Ewing* and *H. Michael Hickson* for Town of Easton, part of appellees. No brief filed on behalf of other appellees. Reargued by *L. Clark Ewing* for Town of Easton, part of appellees.

SMITH, J., delivered the opinion of the Court.

In this case we shall hold unconstitutional that portion of Maryland Code (1957, 1970 Repl. Vol., 1975 Cum. Supp.) Art. 66B, § 4.05 (d) permitting each incorporated town in Talbot County to "have territorial planning and zoning jurisdiction over all land lying within one mile of its corporate boundaries" because Maryland Constitution Art. XI-E forbids passage by the General Assembly of "any law relating to the incorporation, organization, government, or affairs of those municipal corporations which are not authorized by Article 11-A of the Constitution to

have a charter form of government which will be special or local in its terms or in its effect . . . ."

Appellants, David P. Gordon and Marion G. Gordon, his wife (the Gordons), took exception to a change made by the Commissioners of St. Michaels (St. Michaels), an incorporated town in Talbot County, relative to zoning in the area around the Oakwood Inn, described by the chancellor as "situate across the waters of San Domingo Creek from and opposite to the Gordon residence." The area involved is not within the corporate limits of St. Michaels but does lie "within one mile of its corporate boundaries."

The Gordons brought suit in the Circuit Court for Talbot County against St. Michaels, the members of the Planning Commission of St. Michaels, and the owner of Oakwood Inn. They sought, among other things, a declaratory judgment that Art. 66B, § 4.05 (d) was unconstitutional "insofar as it purports to confer upon the Commissioners of St. Michaels the power to zone land lying outside its corporate boundaries." Other incorporated towns in Talbot County including Easton which exercise zoning powers were permitted to intervene. The chancellor (Clark, J.) filed a comprehensive and well-reasoned opinion. Certain of the contentions of the Gordons were decided favorably to them, which contentions are not here relevant. He held, however, that St. Michaels is constitutionally empowered to zone all lands lying within one mile of its corporate boundaries. The Gordons appealed this issue to the Court of Special Appeals. We granted the writ of certiorari prior to consideration of the appeal by that court.

The constitutional issues addressed to the chancellor and originally briefed here concern the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States and the due process provision of the Maryland Declaration of Rights, Art. 23.

When the case came on for argument before us we inquired *ex mero motu* whether enactment of § 4.05 (d) violates Constitution Art. XI-E providing home rule for municipalities and thus was void and of no effect. We

ordered that the case be set for reargument and that the parties specifically brief and argue this point.

Maryland Code (1951) Art. 66B, §§ 10-37 provided for planning and zoning powers for counties and municipalities. Exemptions for certain counties were found in § 35. Talbot County was not exempted. Thus, §§ 10-37 were applicable in Talbot County.

By Chapter 190 of the Acts of 1953 a new subsection (g) was added to Art. 66B, § 21. It provided that "[t]erritorial planning and zoning jurisdiction . . . of any incorporated town of Talbot County sh[ould] include all land located within the corporate boundaries of said town," and that "territorial planning and zoning jurisdiction of the Planning and Zoning Commission of Talbot County sh[ould] include all land lying outside of the corporate boundaries of any incorporated town of Talbot County." It went on, however, to provide that "[t]he Planning and Zoning Commission of any incorporated town of Talbot County sh[ould] have territorial planning and zoning jurisdiction over all land lying within one mile of its corporate boundaries at such time as the incorporated town sh[ould] have approved and adopted a master plan and zoning ordinances for such area, at which such time the authority of the Planning and Zoning Commission of Talbot County over such land [was to] be divested."

The voters of Maryland adopted "home rule" for the municipal corporations of the State at the general election in 1954. This is set forth in Art. XI-E of the Constitution. Art. XI-E, § 1 provides in pertinent part:

"Except as provided elsewhere in this Article, the General Assembly shall not pass any law relating to the . . . , government, or affairs of those municipal corporations which are not authorized by Article 11-A of the Constitution to have a charter form of government which will be special or local in its terms or in its effect, but the General Assembly shall act in relation to the . . . , government, or affairs of any such municipal corporation only by

general laws which shall in their terms and in their effect apply alike to all municipal corporations in one or more of the classes provided for in Section 2 of this Article. . . ."

The provisions of Art. XI-A, to which the above section refers, authorize charter forms of government for Baltimore City and the counties of Maryland. Accordingly, St. Michaels and the other incorporated towns of Talbot County are governed by Art. XI-E. See *Hitchins v. City of Cumberland*, 208 Md. 134, 139, 117 A. 2d 854 (1955), in which case the history and purpose of Art. XI-E are discussed. Art. XI-E, § 2 empowers the General Assembly to "classify all such municipal corporations [by law] by grouping them into not more than four classes based on population . . . ." Pursuant to this authority, the General Assembly, by Chapter 423 of the Acts of 1955, enacted what is now Code (1957) Art. 23A, § 10 declaring "that there is one class of such municipal corporations," and "[e]very municipal corporation in this State, as defined by § 9 [of Art. 23A], shall be taken and considered as a member of that class . . . ." St. Michaels and the other Talbot County municipalities come within this definition. Art. XI-E, § 5, "[n]otwithstanding any other provision in th[at] Article," permits the General Assembly to "enact, amend, or repeal local laws placing a maximum limit on the rate of which property taxes may be imposed by any such municipal corporation and regulating the maximum amount of debt which may be incurred by any municipal corporation." Art. XI-E, § 6 provides that all statutes in effect at the time that article became effective should "remain in effect until amended or repealed in accordance with the provisions of [the] Constitution."

In 1966 the General Assembly adopted a resolution requesting the Governor to appoint a commission "to make a comprehensive review of the State's planning and zoning laws, for the purpose of preparing a revision of th[o]se laws, and to report its recommendations to the Legislative Council . . . ." The final report of the commission was submitted in late 1969. Its proposed § 4.05 was virtually identical with

present Code (1957, 1970 Repl. Vol.) Art. 66B, § 4.05 except that it made no specific reference to Talbot County. The report of the Legislative Council to the 1970 General Assembly recommended adoption of a new Art. 66B with § 4.05 as shown in the report of the commission. The printed report of the Legislative Council is in the form used by the General Assembly to reflect proposed additions and deletions. The new § 4.05 was to be a replacement of Code (1957) Art. 66B, § 21 and the report so reflects. There were only minor changes in language generally, but the Talbot County provisions of former § 21 are printed and shown to be deleted in the proposed new enactment.

By chapter 672 of the Acts of 1970 the General Assembly adopted the new Art. 66B to be effective January 1, 1971. The session laws reflect relative to § 4.05 that in the process of passage through the General Assembly the bill was amended by elimination of the proposed deletion of the old Talbot County provisions and by the insertion of the words "Until, but not after July 1, 1972" at the very beginning of subsection (d) relative to "Zoning Jurisdiction in Talbot County," so that as finally enacted the new Art. 66B proposed to continue the special grant of power to Talbot County municipalities until July 1, 1972. This insertion was eliminated by Chapter 723 of the Acts of 1971 so that no time limitation now appears in Art. 66B, § 4.05 (d) granting this extra-territorial planning and zoning jurisdiction to Talbot County municipalities.

Chapter 723 of the Acts of 1971 pertained only to § 4.05 (d). Section 4.05 (d) concerns only Talbot County. Since there is only one class of municipal corporations in Maryland, since Constitution Art. XI-E, § 1 specifies that the power of the General Assembly to act relative to the affairs of municipal corporations is "only by general laws which shall in their terms and in their effect apply alike to all municipal corporations in one or more of the classes" for which provision is made, and since this act applies only to Talbot County municipalities, it follows that it is unconstitutional. *See generally Bowie Inn v. City of Bowie*, 274 Md. 230, 247-48, 335 A. 2d 679 (1975), and *City of Gaithersburg v.*

*Montgomery County*, 271 Md. 505, 510-13, 318 A. 2d 509 (1974).

We next examine Chapter 672 of the Acts of 1970 which enacted the new Art. 66B. In *Shell Oil Co. v. Supervisor*, 276 Md. 36, 343 A. 2d 521 (1975), Judge Eldridge said for the Court:

> "This Court has the duty, when finding that a statute is invalid in some respect, to separate the valid from the invalid provisions wherever possible. *Bringe v. Collins*, 274 Md. 338, 351, 335 A. 2d 670 (1975); *Clark's Park v. Hranicka*, 246 Md. 178, 185-186, 227 A. 2d 726 (1967). The test of severability is the effectiveness of a statute to carry out the original legislative intent without its invalid provisions. *Balto. v. A. S. Abell Co.*, 218 Md. 273, 290, 145 A. 2d 111 (1958). And where it appears that the Legislature would have enacted a statute even if it had known that certain provisions were invalid, the valid provisions of the statute should be separated from the invalid, and the statute enforced. *Sanza v. Md. Board of Censors*, 245 Md. 319, 338, 226 A. 2d 317 (1967); *Baltimore City v. Stuyvesant Co.*, 226 Md. 379, 391, 174 A. 2d 153 (1961)." *Id.* at 48.

The passage by the General Assembly of the joint resolution in 1966 calling for a commission "to make a comprehensive review of the State's planning and zoning laws, for the purpose of preparing a revision of th[o]se laws" coupled with the report of the commission appointed by the Governor pursuant to that resolution and the subsequent Legislative Council report reflect a legislative intent for a complete rewriting of the article on zoning and planning so that it would be uniform in its application throughout the State. Proposed for elimination were special provisions for various counties appearing in the old law, *e.g.*, Code (1957, 1967 Repl. Vol., 1969 Cum. Supp.) Art. 66B, § 12 as to Cecil, St. Mary's, Kent, Harford, and Washington Counties; subsections (g) and (j) of § 21 providing extra-territorial jurisdiction for

Talbot and Cecil County municipalities, respectively; subsections (i), (k), (l), and (m) of § 21 containing special provisions for Anne Arundel, Carroll, Frederick, and Calvert Counties, respectively; special provisions in § 22 (b) and § 22 (b-2) relative to Anne Arundel and Kent Counties, respectively; and special provisions in §§ 26 and 26A relative to Anne Arundel County. Only the provision here in question, originally § 21 (g), failed of ultimate elimination. From the very nature of Chapter 672 we conclude that the General Assembly would have enacted the statute even had it known that this provision in it relative to Talbot County was invalid. Therefore, we separate from Chapter 672 as invalid only that portion of the act which purported to grant special powers to municipalities in Talbot County.

Counsel for the town of Easton, somewhat ingeniously, has suggested that since that portion of Chapter 672 of the Acts of 1970 which granted special powers to Talbot County municipalities is invalid, this had the effect of leaving viable the 1953 enactment which granted this power to those municipalities prior to passage of Art. XI-E, the home rule amendment. We do not see it that way for two reasons. The provision in Art. XI-E, § 6 is that previously enacted laws "shall remain in effect until amended or repealed in accordance with the provisions of this Constitution." We interpret this to mean amendment of existing statutes by elimination of such provisions as that with which we are here concerned relative to Talbot County or outright repeal. The words "in accordance with the provisions of this Constitution" are significant. In other portions of Art. XI-E when the intent has been to refer to matter within Art. XI-E reference has been made to the article. For instance, in § 1 reference is made to "one or more of the classes provided for in Section 2 of this Article." Section 5 refers to "one or more of the classes provided for in Section 2 of this Article" and "charter provisions enacted under the authority of Section 3 of this Article . . . ." Here, however, the reference is to "the provisions of this Constitution," leading us to believe that it refers to the general legislative powers in Art. III. Pursuant to that power this authority for Talbot County

municipalities has been eliminated. The second reason is that we glean the legislative intent to have been to make Art. 66B uniform throughout the State. Chapter 672 of the Acts of 1970 purported to repeal the preexisting Art. 66B and to reenact it with amendments. The specification of repeal was a general law. Among other things, it eliminated extra-territorial zoning jurisdiction in Cecil County. It was uniform throughout the State. Art. XI-E, § 1 authorizes the General Assembly to act relative to the affairs of municipal corporations "by general laws which shall in their terms and in their effect apply alike to all municipal corporations in one or more of the classes provided for in Section 2 . . . ." Accordingly, we conclude that the provision in Chapter 672 of the Acts of 1970 which repealed the earlier Art. 66B is valid. Consequently, we hold the municipalities of Talbot County to be without power to zone beyond their corporate limits.

> *Decree reversed and case remanded for passage of a decree conforming to this opinion; costs to be paid by appellees.*