# THE MAYOR AND ALDERMEN OF THE CITY OF ANNAPOLIS *v.* WIMBLETON, INC. ET AL.

[No. 1704, September Term, 1981.]

*Decided July 15, 1982.*

The cause was argued before MORTON, WEANT and BISHOP, JJ.

*Richard G. Anderson, City Attorney for Annapolis* and *Richard T. Wright, Assistant City Attorney for Annapolis,* with whom was *Roger A. Perkins, Assistant City Attorney for Annapolis,* on the brief, for appellant.

*Karen Alexa Murphy, Assistant County Solicitor for Anne Arundel County,* with whom was *Steven P. Resnick, County Solicitor for Anne Arundel County,* on the brief, for appellees.

BISHOP, J., delivered the opinion of the Court.

The Mayor and Aldermen of the City of Annapolis, collectively the appellant, appeals from an order of the Circuit Court for Anne Arundel County. By that order, filed on November 20, 1981, the circuit court declared that:

1) Md. Ann. Code, Art. 23A, § 19 (u) is a valid and constitutional enactment;
2) Anne Arundel County Bill No. 152-80 is a valid enactment registering Anne Arundel County's disapproval of a certain annexation resolution made by the City of Annapolis; and
3) A prayer by the City of Annapolis for injunctive relief, requesting that Anne Arundel County be precluded from submitting the annexation resolution to a referendum vote by the County electorate, was denied.

On appeal the appellant asks *inter alia:*

"Does Subsection (u) constitutionally comport with Sections 1 and 2 of Article XI-E of the Maryland Constitution when it legislates with regard to the organization, government, and affairs of municipal corporations in Anne Arundel County in a manner which impermissibly classifies those municipal corporations on a basis other than population?"

For the reasons set forth in this opinion we answer

negatively this question and, therefore, reverse the order of the circuit court.

## The Facts

The City of Annapolis (the City) is a municipal corporation of the State of Maryland; Anne Arundel County (the County) is a Maryland charter county, and is one of the appellees.

By a deed dated August 23, 1978, Wimbleton, Inc., the other appellee, owns a certain uninhabited and unimproved parcel of land containing approximately 188.35 acres. This land, referred to by the parties as the Wimbleton tract, is located between Spa Road, Harness Creek Road, and Forest Drive, and is contiguous to the boundaries of the City as they existed prior to August 11, 1980. Water service to areas adjacent to the tract is provided by the City's facilities, while waste-water and sewage services are supplied by facilities jointly operated by the City and the County.

On or about April 9, 1980, Wimbleton, Inc., duly petitioned the City to annex the Wimbleton tract to the property included within the City's geographic and jurisdictional boundaries. After reviewing this petition, John C. Apostol, then Mayor of the City, introduced City Resolution R-35-80 before the City's legislative body. This resolution proposed the annexation and change of municipal boundaries requested in the petition of Wimbleton, Inc. Following the introduction of this resolution, public hearings thereon were scheduled and advertised and the City informed the County of the time of one such hearing and of the nature of the annexation. On August 11, 1980, the Mayor and Aldermen of the City enacted Resolution R-35-80, and on September 30, 1980, the Wimbleton tract was annexed to the property included within the boundaries of the City. At no time did the County ever file with the City any petition for a referendum on the issue of the annexation.

On December 1, 1980 the County Council passed County Bill No. 152-80. This bill, which was approved by the County

Executive on December 2, 1980, registered the County's disapproval of the City's annexation resolution R-35-80. Moreover, the bill called for submission of the annexation resolution to a November 2, 1982 referendum of the Anne Arundel County electorate for their approval or rejection, and asserted that the "effectiveness of the annexation res-olution" was suspended pending the referendum.

The appellant commenced this action against the appellees seeking declaratory and injunctive relief. This relief was denied by the circuit court's order of November 20, 1981.

## I. *Constitutionality of Md. Ann. Code, Art. 23A, § 19 (u)*

In its bill of complaint for declaratory and injunctive relief filed with the circuit court, the appellant alleged as grounds for relief:

> "19. The County's authority to enact Bill No. 152-80 (and the effectiveness of said bill) is based exclusively on said subsection (u) of Section 19 of Article 23A of the Annotated Code of Maryland. For the reasons hereinafter set forth, said subsection (u) of Section 19 of Article 23A of the Annotated Code of Maryland is unconstitutional, void, and of no effect; and, therefore, the County's Bill No. 152-80 is likewise void and of no effect.
> 20. Subsection (u) of Section 19 of Article 23A of the Annotated Code of Maryland is unconstitutional, void and of no effect in that it constitutes local legislation prohibited by Section 1 of Article XI-E of the Constitution of Maryland."

The General Assembly is empowered under Article III, § 48 of the Maryland Constitution to form municipal corpo-rations. The General Assembly's regulation of these munic-ipal corporations is restricted under Article XI-E, § 1 which provides:

> "Except as provided elsewhere in this Article, the

General Assembly *shall not pass any law* relating to the incorporation, organization, government, or affairs of those municipal corporations which are not authorized by Article 11-A of the Constitution to have a charter form of government *which will be special or local in its terms or in its effect,* but the General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation only *by general laws which shall in their terms and in their effect apply alike to all municipal corporations* in one or more of the classes provided for in Section 2 of this Article. It shall be the duty of the General Assembly to provide by law the method by which new municipal corporations shall be formed." (Emphasis added).[1]

In Article 23A of the Code is Section 19 dealing with the powers of municipal corporations to enlarge their corporate boundaries by annexation. Specifically, subsection (a) of this Section 19 expressly provides that "[t]he legislative body . . . of every municipal corporation in this State may enlarge the corporate boundaries thereof as in this subheading provided; . . ." As noted by the Court of Appeals, Section 19 provides a procedure whereby

"Every municipal corporation may annex contiguous land not within the boundaries of another municipality, either on the initiative of the city or town or of the residents of the area. . . . In every case the residents or the person, firm or corporation have a final veto by way of a referendum election." *Mayor and Council of Rockville v. Brookeville Turnpike Construction Co., Inc.,* 246 Md. 117, 129, 228 A.2d 263, 270 (1967).

In 1975, the General Assembly amended this procedure by enacting Laws of Maryland, 1975, Chapter 781 to add what

---

1. The Maryland General Assembly has seen fit not to provide for different classes of municipalities as provided in § 2.

is now Subsection (u). This Subsection gives Anne Arundel County the additional power to register its disapproval of an annexation resolution by one of the two municipal corporations located within its geographical boundaries and thereby to require a referendum of the electorate of the County.

In pertinent part, Subsection (u) provides:

"(u) *Referendum in Anne Arundel County.* — (1) Anne Arundel County, by ordinance enacted according to its regular legislative procedure, may register its disapproval of the annexation resolution and provide for the submission of the resolution to a referendum vote of the electorate of the entire county at the next ensuing general election of the county for the members of the House of Representatives of the United States which is held at least 45 days after the enactment of the ordinance. The ordinance shall not be valid unless enacted . . . before the expiration of 120 days after the enactment of the annexation resolution by the municipal corporation if no petition for referendum is filed under either of these subsections. The county ordinance passed pursuant to this subsection shall have the effect of suspending the effectiveness of the annexation resolution until after the referendum. If no valid ordinance is enacted by the county pursuant to this section within the time herein specified, the annexation resolution of the municipal corporation shall have the same effect as if this subsection had not been enacted."

Addressing the issue of Subsection (u)'s constitutionality vis-à-vis Section 1 of Article XI-E of the Maryland Constitution, the Circuit Court held:

"Article XI-E, § 1 prohibits the General Assembly from enacting any law 'relating to the incorporation, organization, government, or affairs' of municipal corporations. It is within the province of the court, viewing the totality of the circum-

stances, to determine whether any enactment of the General Assembly is a prohibited local law or a valid general law. *Prince George's County v. Laurel,* 262 Md. 171, 277 A.2d 262 (1971), and *Birge v. Town of Easton,* 274 Md. 635, 337 A.2d 435 (1975).

The Standard to be applied by the court in reaching this conclusion is clearly enumerated in the *Birge* case *(supra),* where the court held that:

'[i]f the effect of local rules or municipal control is not great upon people outside the home-rule city, the matter is apt to be deemed local.

. . .

Contrariwise, if the effect of the regulation or the administration of a particular matter is likely to be felt by a considerable number of people outside the city and in a rather strong degree, courts are probably going to conclude that the concern is for the state.'

Supporting the *Birge* holding are the decisions rendered in *Dasch v. Jackson,* 170 Md. 251, 183 A. 534 (1936), where the Court held that a law which affects persons residing beyond a municipality could hardly be a local law, and *Balto. Transit Co. v. Metro Transit Auth.,* 233 Md. 509, 194 A.2d 643 (1963), where the Court opined that although a law may apply to or in a municipality it is not for that reason a 'local law' and thus barred by the constitution.

In considering this matter, the Court has reviewed the aforementioned case law, the preamble to Chapter 781 of the Laws of 1975 which enacted subsection (u), wherein the legislature anticipated that municipal annexations could have far reaching impact, and the testimony of Ms. Becky Kurdle, County Planning and Zoning Administrator, who indicated that there would be substantial impact beyond the City if the proposed

annexation were carried out. On this bases *[sic]*, the Court finds that Subsection (u), Article 23A, § 19 is a valid general law that has substantial impact beyond the City, and therefore does not violate Article XI-E, § 1."

The appellant contends that annexation defines "the area of jurisdiction of the municipal corporation," and that nothing is "more basic to a municipality than is the very definition of its jurisdictional boundaries." The appellant asserts, on the basis of the importance of the City's annexation process, that the County could not constitutionally have been provided with authority to affect that process by means of a local law.

Preliminarily we disagree with the appellant's contention that Md. Ann. Code, Art. 23A, § 19 (u), which purports to authorize the electorate of Anne Arundel County to register its disapproval of the City's annexation resolutions, is a "special or local" law, and, therefore, in violation of Article XI-E, § 1 of the Maryland Constitution. This holding is compelled by the case authority which interprets the meaning of the phrase "local law."

Although Article XI-E does not define "local law," the Court of Appeals has frequently interpreted the meaning of that phrase. In *Dasch v. Jackson,* 170 Md. 251, 183 A. 534 (1936), the Court held that a statute, regulating paperhangers in Baltimore City, was not a local law within the meaning of Article XI. Judge Offut cited *Bradshaw v. Lankford,* 73 Md. 428, 431, 21 A. 66 (1891) for the proposition that "a law is not necessarily a local law merely because its operation is confined to Baltimore City or to a single county, if it affects the interests of the people of the whole State." 170 Md. at 259-260. The Court reasoned that:

> "Any complete or final definition of the term 'local law' is, because of the varying meanings attached to it, considered in reference to its geographical extent and the classification of the objects to which it applies, difficult to formulate, and perhaps more difficult to apply with any proper

degree of uniformity or certainty. A law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area. It may also be general in the sense that it affects some matter in which the people of the whole legislature jurisdiction may be interested, such as the general revenue, but local in the sense that it imposes burdens on property, business, or transactions only within a limited area." *Id.* at 260.

In *Dasch* the Court determined that the paperhangers statute was not local because it imposed taxes payable to the State, and because it affected the right of persons not residing in Baltimore City.

In the present case the lower court found on the basis of witness testimony that Art. 23A, § 19 (u) had "substantial impact" beyond the immediate jurisdiction to which it was addressed. We have no reason to dispute this factual determination; from that finding it must necessarily be concluded that the statute was not a local law.

In *Norris v. Mayor and City Council of Baltimore*, 172 Md. 667, 681, 192 A. 531 (1937), the Court said:

"While it is difficult to formulate a comprehensive definition of distinction between a public local law and a public general law, it may be said that a 'public local law' is a statute dealing with some matter of governmental administration peculiarly local in character, in which persons outside of that locality have no direct interest, and a 'public general law' is one which deals with a subject in which all the citizens of the state are interested alike, . . . ."

See *Prince George's County v. Maryland-National Capital Park and Planning Commission,* 269 Md. 202, 225, 306 A.2d 223, *cert. denied,* 414 U.S. 1068 (1973); *Cole v. Secretary of*

*State,* 249 Md. 425, 433, 240 A.2d 272 (1968). Therefore, subsection (u), affecting persons or property outside the municipality, is a "general law" as that term is used in Article XI-E, § 1. A general law, such as Md. Ann. Code, Art. 23A, § 19 (u), must in its terms and effect "apply alike to all municipal corporations," to satisfy the requirements of Article XI-E, § 1 of the Maryland Constitution. Although the appellant never assumes *arguendo* that Subsection (u) is a general law, and never contends that Subsection (u) is unconstitutional because it fails to comply with the Article XI-E, § 1 requirement of uniformity for general laws, nevertheless, by its challenge to the constitutionality of Subsection (u) the appellant has adequately preserved for this appeal the issues pertaining to Subsection (u)'s constitutionality under Article XI-E, § 1.

Reflecting a desire by the people of Maryland to preclude legislation aimed at only certain specific municipalities, Article XI-E, § 1 "prohibits the General Assembly from enacting legislation effective in a particular municipality *unless* it applies to all municipalities within a class." *Mayor and Council of Forest Heights v. Frank,* 291 Md. 331, 344, 435 A.2d 425 (1981). (Emphasis supplied).

Maryland's constitutional requirement under Article XI-E, § 1 is analogous to provisions in the constitutions of many states which require that laws of a general nature shall have a uniform operation throughout the State. These provisions serve to assure uniformity and prevent uncertainty that would result from conflicting laws in the same jurisdiction. As stated in 2 McQuillin, *Municipal Corporations,* § 4.24 at 50 (1979):

> "It means that general laws must operate uniformly, that is, in the same manner on all persons and things who stand in the same situation, or who stand in the same relation to the law touching the privileges and immunities granted by it, or the act or acts which it forbids; it does not mean that general laws must operate alike upon all subjects of legislation, or upon all citizens and

persons. This provision has reference only to what are termed general laws; by its [sic] valid local legislation is not forbidden. This provision is violated if the law is restrictive in its operation, that is, if it is of a general nature it must operate in all parts of the state, and not in part or parts only."

The treatise writer relied in part on the decision of *Costello v. Village of Wyoming,* 30 N.E. 613, 616 (Ohio 1892) in which the Ohio Supreme Court stated:

"[A] law may be general in its provisions, and may apply to the whole of a group of objects having characteristics sufficiently manifest and important to make them a class by themselves, and yet the marks of distinction on which the classification is founded may be such that the law may be in contravention of a constitutional provision prohibiting the enactment of special laws which regulate the internal affairs of towns and cities. If all that is requisite for the purpose of legislation is to designate villages by some quality, no matter what it may be, which will so distinguish them as to mark them as a distinct class, the constitutional restriction in regard to the uniform operation of laws on a general nature would be of no avail, as there are few objects that cannot be arbitrarily associated."

The more recent case of *State ex rel. Keefe v. McInerney,* 182 P.2d 28, 38 (Wyo. 1947) was cited for a similar principle in 1 Antieau, *Municipal Corporation Law,* § 2.15 at 2-48 (1982):

"Nevertheless, it is suggested that the commentators who see in this no additional requirement or limitation beyond that set forth in the ban upon special laws are in error. A law can apply, for instance, to all of a general class within a restricted area of a state, such as to all cities bordering on the ocean, without being uniform throughout the state. 'A law may be general,' states the Wyoming

Supreme Court, 'but not of uniform application.' Conversely, as that tribunal points out, 'if that uniformity of operation is absent the law is not necessarily special or local.' And it has been noted that even though the classification is not violative of the ban upon special laws, laws favoring one class of municipal corporations over others of the same kind may be unconstitutional as not of uniform operation. 'If unequal powers are granted to any class of cities or towns,' states the Wyoming Supreme Court, 'then there would seem to be an absence of uniform operation in the law. Conversely if the several classes each have been granted the identical powers no want of uniformity of operation would seem to exist.' "

In Maryland the principle of uniformity for general laws set forth under Article XI-E, § 1 has been recognized, but only rarely has the need arisen to invoke the principle. *See Bowie Inn, Inc. v. City of Bowie,* 274 Md. 230, 248, 335 A.2d 679 (1975) in which the Court of Appeals noted that the General Assembly had recognized the unconstitutionality of a general law, rendered inapplicable to certain counties, and had repealed the statute in question. Similarly in *Gordon v. Commissions of St. Michaels,* 278 Md. 128, 133, 359 A.2d 543 (1976) the Court of Appeals held unconstitutional a statute which violated Article XI-E, § 1 by authorizing only Talbot County municipalities to exercise planning and zoning jurisdiction outside their corporate boundaries.

A statute may withstand a challenge on the grounds that it lacks uniform *application* under Article XI-E, § 1 if it "in its entirety applies to all municipalities throughout the State which are subject to Article XI-E." *City of Gaithersburg v. Montgomery County,* 271 Md. 505, 510, 318 A.2d 509 (1974). *See also Prince George's County v. Laurel,* 262 Md. 171, 188-189, 277 A.2d 262 (1971). In the present case, however, Art. 23A, § 19 (u) clearly applies to Anne Arundel County only and, therefore, only to the two municipalities in Anne Arundel County. Thus as a general law, it

is unconstitutional because it violates the uniformity provision of Article XI-E, § 1.[2]

Inasmuch as our response to the primary question is dispositive of the case, we need not address the appellant's remaining questions.[3]

> *Judgment reversed; case remanded for declaration and injunction in accordance with this opinion; costs to be paid by appellees.*

---

**2.** Article 23, § 19 (h) already provides a procedure applicable to all municipalities for petitioning an annexation petition to referendum.

**3.** Since we have based our ruling on Article XI-E, § 1, we will not review the constitutional question raised with reference to § 2.