*Mayor and City Council of Ocean City, et al. v. Commissioners of Worcester County, Maryland, et al.*, No. 52, September Term, 2020.  Opinion by Getty, J.

**MARYLAND CONSTITUTION – ARTICLE XI-E, § 1 – HOME RULE AMENDMENT – TAX SETOFFS**

The Court of Appeals held that Md. Code (1986, 2019 Repl. Vol.), Tax-Prop. ("TP") §§ 6-305 and 6-306 do not violate Article XI-E, § 1 of the Maryland Constitution.  The Court determined that, under the test set forth in *Birge v. Town of Easton*, 274 Md. 635 (1975), TP §§ 6-305 and 6-306 do not "relat[e] to the incorporation, organization, government, or affairs" of any municipal corporation, much less Ocean City.  The tax setoff scheme set forth by the General Assembly in TP §§ 6-305 and 6-306 has significant implications for residents of Worcester County who do not reside in Ocean City, therefore the Court declined to classify the statutes as affecting purely local matters.  The Court thus did not reach the issue of severability and affirmed the Court of Special Appeals' judgment upholding the constitutionality of the statutes.

IN THE COURT OF APPEALS

OF MARYLAND

No. 52

September Term, 2020

_____

MAYOR AND CITY COUNCIL OF OCEAN CITY, ET AL.
V.
COMMISSIONERS OF WORCESTER COUNTY,
MARYLAND, ET AL.

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Opinion by Getty, J.

_____

Filed: August 5, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case involves a long-standing dispute between a municipality seeking tax setoffs and a county that has always refused to grant them, preferring instead to provide discretionary funding to the municipality. Against the backdrop of a constitutional amendment providing for home rule by municipalities passed by the General Assembly in 1954, Ocean City argues that all municipalities must be treated equally under the law of Maryland.

Worcester County, citing to Tax-Property Article §§ 6-305 and 6-306, asserts that while certain counties are required to grant tax setoffs to municipalities within their borders under circumstances defined by statute, other counties including Worcester County retain the discretionary ability to do so under the same circumstances. As we explain below, we hold that these provisions of the Tax-Property Article do not fall within a category of constitutionally prohibited legislation, and we affirm the Court of Special Appeals' conclusion that they are permissible within the scope of Article XI-E, § 1 of the Maryland Constitution.

## BACKGROUND

### A. *Ocean City's Requests for Municipal Tax Setoffs.*

Incorporated in 1880, Ocean City is the second largest municipality in Worcester County by population. Ocean City taxpayers primarily receive governmental services, such as police, fire, and ambulance services, from the city despite paying taxes to both the city and the county. Neither Ocean City nor its residents receive tax setoffs from Worcester County for the money that Ocean City spends on these governmental services. This prompted Ocean City to request tax setoffs from Worcester County, either in the form of a

tax differential or a rebate to mitigate any duplicative spending by its taxpayers for such services.

The earliest of these requests occurred in 1999 while the most recent occurred in 2017 for fiscal year 2019. All of Ocean City's requests have faced the same fate: they have been repeatedly denied by Worcester County. In lieu of granting Ocean City's requested tax setoffs, Worcester County has provided discretionary funding to Ocean City in the form of annual grants. Since 2009, these grants have amounted to between $4 million and $5 million per year to assist in funding Ocean City's ambulance and fire services, tourism, and other city services.

## B.     Ocean City's Declaratory Judgment Action.

Following these repeated denials, Ocean City filed the present action in the Circuit Court for Worcester County. Ocean City sought a declaratory judgment that §§ 6-305(b) and 6-306 of the Maryland Tax-Property ("TP") Article,[1] which grant certain counties like Worcester County the ability to deny municipal tax setoff requests, are unconstitutional as violating Article XI-E, § 1 of the Maryland Constitution. Ocean City also requested that the circuit court sever both provisions, thereby requiring all Maryland counties to grant tax setoffs to municipalities within their borders. In addition, Ocean City asked that the circuit court specifically declare that Worcester County is required to grant tax setoffs to Ocean City or its taxpayers.

---

[1] *See* Md. Code (1986, 2019 Repl. Vol.), Tax-Prop. ("TP") §§ 6-305, 6-306.

Worcester County moved to dismiss Ocean City's complaint. The circuit court declined to do so. Alternatively, Worcester County sought summary judgment on the ground that TP §§ 6-305(b) and 6-306 are constitutional within the scope of Article XI-E and therefore should not be severed. Ocean City cross-moved for summary judgment. Incorporating the reasons set forth in Worcester County's motion, the circuit court granted summary judgment in favor of Worcester County on the basis that TP §§ 6-305 and 6-306 "are not 'special or local in [their] terms or in [their] effect' relating 'to the . . . government, or affairs of . . . municipal corporations,' as those terms are used in Article XI-E[,] § 1, of the Maryland Constitution[.]" *Mayor of Ocean City v. Comm'rs of Worcester Cty.*, No. C-23-CV-18-000021, at 2 (Md. Cir. Ct. Worcester Cty. Oct. 19, 2018) (Order as to Declaratory Judgment) (quoting Md. Const. art. XI-E, § 1) (first two alterations in original).

### C. Appeal and Opinion of the Court of Special Appeals.

Ocean City timely appealed the circuit court's grant of summary judgment to the Court of Special Appeals. Ocean City also filed a petition for writ of certiorari to bypass appellate review in the Court of Special Appeals, which this Court denied. The Court of Special Appeals heard oral argument on the matter and affirmed the circuit court's grant of summary judgment in an unreported opinion, holding that "the question of whether counties must or may offer tax setoffs is not a purely local affair and need not comply with the restrictions on State legislation concerning local affairs found in Article XI-E, § 1." *Mayor of Ocean City v. Comm'rs of Worcester Cty.*, No. 2751, Sept. Term, 2018, 2020 WL 6041992, at *7 (Md. Ct. Spec. App. Oct. 13, 2020). The Court of Special Appeals grounded its holding in this Court's analysis in *Birge v. Town of Easton*, 274 Md. 635

3

(1975), in which the Court analyzed the constitutionality of a local charter amendment under the language of Article XI-E. *Ocean City*, 2020 WL 6041992, at *5–6. Because the court determined that "the tax setoff laws are constitutional," it did not address the issue of severability. *Id.* at *4.

Ocean City then timely petitioned this Court for a writ of certiorari which was granted on February 8, 2021. *Mayor of Ocean City v. Comm'rs of Worcester Cty.*, 472 Md. 314 (2021). Accordingly, two questions are before the Court, which we have rephrased as follows:[2]

> 1) Are Sections 6-305 and 6-306 of the Tax-Property Article constitutional under Article XI-E, § 1 of the Maryland Constitution?
>
> 2) If not, should the unconstitutional provisions be severed so that all municipalities are required to receive mandatory tax setoffs upon demonstrating that they perform a type of service that is provided by the county?

---

[2] The questions presented in the Petition for Writ of Certiorari read:

> 1) Are Md. Code §6-305 and §6-306 of the Tax-Property Article ("TP") – which provide for mandatory real property tax setoffs for certain municipalities, but only optional tax setoffs for other municipalities, including Ocean City – constitutional under Article XI-E, §1 of the Maryland Constitution, which requires the General Assembly to "act in relation to the . . . government or affairs of any . . . municipal corporation only by general laws which shall in their terms and in their effect apply alike to all municipal corporations"?
>
> 2) Should the unconstitutionally non-uniform provisions of TP §6-305 and §6-306 be severed to the end that all municipalities in this State should be entitled to receive mandatory tax setoffs from the counties in which they are located, upon a showing by a municipality that it performs services of a type provided by the county (i.e., upon a showing that it is entitled to setoff)?

4

For the reasons more fully stated below, we affirm the judgment of the Court of Special Appeals and hold that TP §§ 6-305 and 6-306 are constitutional within the language of Article XI-E, § 1 of the Maryland Constitution. Like the Court of Special Appeals below, we do not reach the question of severability given our upholding of the constitutionality of the statutes.

## STANDARD OF REVIEW

This case hinges on the interpretation of Article XI-E, § 1 of the Maryland Constitution. Our interpretation of the Maryland Constitution is a question of law; therefore, we review a circuit court's interpretation of the Maryland Constitution under a *de novo* standard. *See Peterson v. State*, 467 Md. 713, 725 (2020) ("We review interpretations and applications of Maryland constitutional . . . law[] under a *de novo* standard of review to establish 'whether the trial court's conclusions are legally correct.'") (quoting *Schisler v. State*, 394 Md. 519, 535 (2006)); *see also Davis v. Slater*, 383 Md. 599, 604 (2004) ("Because our interpretation of the Maryland Declaration of Rights and Constitution . . . [is] appropriately classified as [a] question[] of law, we review the issues *de novo* to determine if the trial court was legally correct in its rulings on these matters.").

## DISCUSSION

### A. *Article XI-E of the Maryland Constitution.*

Governor Theodore R. McKeldin established the Commission on the Administrative Organization of the State, now referred to as the "Sobeloff Commission," in 1952 to address concerns that the General Assembly was inundated with local legislation during each legislative session that detracted from its ability to address significant

5

statewide issues. *See* J. Res. 11, 1951 Leg., 340th Sess. (Md. 1951) ("[T]he introduction and consideration of local bills in the General Assembly is one of the oldest and most difficult problems confronting this legislative body[.]"). The Sobeloff Commission noted that "[l]ocal legislation ma[de] heavy demands on the time and energy of members of the General Assembly" because municipalities largely lacked the ability to enact their own legislation. *Campbell v. City of Annapolis*, 289 Md. 300, 305–06 (1981) (citing Local Legislation in Maryland, Commission on Administrative Organization of the State 1 (2d Rep. 1952) ("Sobeloff Report")). As a result, the Sobeloff Commission proposed a new amendment to the Maryland Constitution that would "prohibit State enactment of local legislation relating to municipalities" except in limited circumstances. *Id.* at 306 (citing Sobeloff Report at 3).

In 1954, the General Assembly passed a Constitutional Amendment that was ratified by Maryland voters that adopted Article XI-E of the Maryland Constitution. The purpose of Article XI-E was "to permit municipalities to govern themselves in local matters" while restricting the General Assembly from enacting laws that treat municipalities differently through broad legislation. *Maryland-Nat'l Capital Park & Planning Comm'n v. Town of Wash. Grove*, 408 Md. 37, 57–58 (2009) (quoting *Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 425 (1988)). Article XI-E consists of six sections.

At issue in this case,[3] Article XI-E, § 1 reads:

---

[3] *Amici curiae* argue in support of Ocean City that TP §§ 6-305(b) and 6-306 are unconstitutional as violating Article XI-E, § 2 in addition to § 1. However, this argument under § 2 was not raised by Ocean City in its petition for writ of certiorari nor was it argued below, making consideration of that argument improper before this Court. *See* Md. Rule

6

> [T]he General Assembly shall not pass any law relating to the incorporation, organization, government, or affairs of those municipal corporations . . . which will be special or local in its terms or in its effect, but the General Assembly shall act in relation to the incorporation, organization, government, or affairs of any such municipal corporation *only* by general laws which shall in their terms and in their effect apply alike to all municipal corporations[.]

Md. Const. art. XI-E, § 1 (emphasis added). Article XI-E, § 1 effectively prohibits the General Assembly from enacting local legislation that is not generally applicable while reserving the General Assembly's ability to enact broad, uniform legislation. However, what exactly constitutes an issue relating "to the incorporation, organization, government, or affairs" of a municipality has not been precisely defined by this Court nor did the Sobeloff Commission recommend a concise definition.

> In fact, the Sobeloff Commission specified that
>
> [t]he proposed constitutional amendment would not define matters of municipal [incorporation,] organization, government and affairs concerning which the General Assembly could pass no local laws. Since local affairs are not spelled out in the present Constitution, final determination as to what they are would continue to remain in the courts.

Sobeloff Report at 32. Ocean City now asks us to make a final determination as to whether the current tax setoff scheme in Maryland impermissibly regulates local affairs.

**B.** *History of Tax Setoff Laws.*

---

8-131(a) ("Ordinarily, the appellate court will not decide any other issue [than jurisdiction over the subject matter and over a person] unless it plainly appears by the record to have been raised in or decided by the trial court[.]"); *see also* Md. Rule 8-131(b)(1) (specifying that "the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals").

Shortly after the adoption of Article XI-E, the General Assembly observed that "[t]here [was] no consistenc[y] among the several counties in Maryland as to the bases for county tax differentials for residents of incorporated municipalities and/or rebates by the various counties to the incorporated municipalities therein." *See* J. Res. 26, 1959 Leg., 351st Sess. (Md. 1959). This prompted the General Assembly to establish the Commission on City-Council Fiscal Relationships in 1959 (the "1959 Commission") to examine the "fiscal relationships . . . between the city and county governments." *Id.* In passing Joint Resolution 26, the General Assembly recognized that it may be appropriate to grant municipal residents "lower county tax rates in consideration of the fact that many of their governmental services are provided by the town and not by the county." *Id.*

However, the 1959 Commission concluded that "any possible solutions" to the problem of municipality-county tax differentials would have to "be developed on a County-by-County basis." *See* Local Legislation in Maryland, Commission on City-Council Fiscal Relationships 12 (1st Rep. 1963). This approach was later endorsed by both Maryland courts and legislative committees. *See Griffin v. Anne Arundel Cty.*, 25 Md. App. 115, 124 (1975) (explaining that the Committee on Taxation and Fiscal Affairs of the Legislative Council of Maryland found in 1970 that a statewide tax differential system is unfeasible "because of the variation in the types of governmental services provided by . . . local governments").

In 1975, the General Assembly acted on these recommendations by enacting Article 81, § 32A, which required certain counties to provide tax setoffs to municipalities within their borders if the municipalities provided government services similar to those provided

8

by the county.  1975 Md. Laws, ch. 715.  The counties that were not required to grant tax setoffs retained the discretion to do so if the municipality provided government services similar to those provided by the county.  *Id.*  The General Assembly then adopted a resolution in 1978 mandating that counties discuss tax differentials with their municipalities on an annual basis in order to ensure that Maryland counties were continuously addressing the issue of tax differentials.  *See* J. Res. 31, 1978 Leg., 384th Sess. (Md. 1978).

Under Maryland's code revision,[4] Article 81 was recodified as the current tax setoff statutes, TP §§ 6-305 and 6-306, when the General Assembly adopted the Tax-Property Article in 1985.[5]  The revised statute employs the same general framework.  *See* 1985 Md. Laws, ch. 8, § 2.

Section 6-305(a) defines "tax setoff" as:

---

[4] As we noted in *Johnson v. State*, "code revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it."  467 Md. 362, 381 n.8 (2020) (quoting *In re S.K.*, 466 Md. 31, 56 n.21 (2019)).  We further explained that:

> Maryland Code Revision began in 1970 as a long-term project to create a modern comprehensive code when Governor Marvin Mandel appointed the Commission to Revise the Annotated Code.  This formal revision of the statutory law for the General Assembly was coordinated by the Department of Legislative Services.  Code Revision was completed in 2016 with the enactment by the General Assembly of the Alcoholic Beverages Article.

*Id.*

[5] Although enacted in 1985, TP §§ 6-305 and 6-306 had an effective date of February 1, 1986.

9

(1) the difference between the general county property tax rate and the property tax rate that is set for assessments of property in a municipal corporation; or

(2) a payment to a municipal corporation to aid the municipal corporation in funding services or programs that are similar to county services or programs.

TP § 6-305(a).

Section 6-305(b) sets forth that the provisions of § 6-305 only apply to the following eight counties: Allegany, Anne Arundel, Baltimore, Garrett, Harford, Howard, Montgomery, and Prince George's. TP § 305(b). Section 6-305(c) then mandates that the above-named counties "shall" provide municipalities within their borders a tax setoff if the municipality demonstrates that it "performs services or programs instead of similar county services or programs[.]" *Id.* § 305(c). Thus, § 6-305(c) leaves no discretion for the applicable county to deny a municipality's tax setoff request if they meet the statutory requirements.

Finally, § 6-306 explains that the remaining Maryland counties *may* grant tax setoffs to municipalities within their borders that demonstrate the same conditions. TP § 6-306.

These provisions also set forth detailed instructions by which municipalities must submit tax setoff requests. Alas, these are the processes by which Ocean City has attempted to receive tax setoffs from Worcester County to no avail. *See* TP §§ 6-305(f)–(h); 6-306(f)–(h).

### C.     Birge v. Town of Easton.

The Court of Special Appeals relied on, and both parties discuss at length in their briefs, the 1975 case of *Birge v. Town of Easton* in analyzing whether TP §§ 6-305(b) and 6-306 violate Article XI-E, § 1 of the Maryland Constitution. 274 Md. at 635. In *Birge*,

10

this Court analyzed whether the Town of Easton could amend its charter under Article XI-E, § 3 to allow for the acquisition of property located outside of its boundaries for the operation of a municipally-owned electrical system. *Id.* at 636. The relevant language under Article XI-E, § 3—much like that of § 1 here—only allowed for Easton to do so if its amendment "relat[ed] to the incorporation, organization, government, or affairs" of the municipal corporation. Md. Const. art. XI-E, § 3.

Thus, the broader question before the Court in *Birge* was substantially similar to that before the Court today: what constitutes a matter "relating to the 'incorporation, organization, government, or affairs'" of a municipal corporation? *Birge*, 274 Md. at 644–45. In holding that Easton was permitted to amend its charter, this Court adopted the following test to determine "whether a matter is local or is one of general state concern," or in other words is "a matter relating to the incorporation, organization, government, or affairs of [a] municipality":

> If the effect of local rules or municipal control is not great upon people outside the home-rule city, the matter is apt to be deemed local. . . . Contrawise, if the effect of the regulation or the administration of a particular matter is likely to be felt by a considerable number of people outside the city and in a rather strong degree, courts are probably going to conclude that the concern is for the [S]tate.

*Id.* at 644 (quoting 1 C. Antieau, Municipal Corporation Law § 3.36 (1973)). This Court further reiterated that the "final determination of what constitutes a matter of purely local or municipal concern, *i.e.*, a matter relating to the 'incorporation, organization, government, or affairs' of the municipality, is for the courts to make in light of all existing circumstances." *Id.* (quoting Md. Const. art. XI-E).

11

### D.     *Parties' Contentions.*

Ocean City argues that TP §§ 6-305(b) and 6-306 relate to municipal or local affairs within the meaning of Article XI-E, § 1 because municipalities have the inherent ability to provide certain services like controlling finances, collecting taxes, and maintaining fire and police departments. According to Ocean City, funding these services constitutes a municipal affair because those powers themselves deal with municipal affairs. Ocean City also contends that the Court of Special Appeals' reliance on *Birge* below was misplaced for three reasons. First, Ocean City asserts that *Birge* directs courts to evaluate whether a matter deals with municipal affairs on a relative basis and need not be a matter of *purely* municipal concern. Rather, Ocean City claims that issues that impact municipalities and their residents constitute matters of municipal concern within the scope of Article XI-E, § 1. Second, Ocean City argues that *Birge* created a test to determine only whether a *locally* adopted law is constitutional, rather than whether a matter relates to the affairs of a municipality. Finally, Ocean City maintains that *Birge* is distinguishable from this case because the *Birge* Court interpreted Article XI-E, § 3 of the Maryland Constitution, rather than Article XI-E, § 1.

On the other hand, Worcester County argues, and both courts below agree, that Article XI-E, § 1 forbids the General Assembly only from enacting non-uniform legislation that interferes with *purely* local affairs, and that TP §§ 6-305 and 6-306 do not deal with purely local affairs. Worcester County further asserts that merely having an interest in or being impacted by an issue does not make it a municipal affair within the meaning of Article XI-E and that such a standard is impermissibly broad. Moreover, Worcester County

contends that simply because Ocean City has the power to control finances, collect taxes, and provide emergency services on a local level does not necessitate that Ocean City has the power to set the standards for similar services on a county level.

*E.     Analysis.*

For the provisions of TP §§ 6-305 and 6-306 to violate Article XI-E, § 1, they must "relat[e] to the incorporation, organization, government, or affairs" of municipal corporations and apply non-uniformly.[6]  Md. Const. art. XI-E, § 1.  As described above, Ocean City argues that, because TP §§ 6-305(b) and 6-306 relate to its "incorporation, organization, government, or affairs[,]" the statutes are unconstitutional under Article XI-E, § 1 of the Maryland Constitution.  Worcester County responds that the tax setoff statutes are constitutional because they do not regulate matters of purely local concern and therefore do not fall within this definition.  We agree with Worcester County and, as explained below, hold that TP §§ 6-305(b) and 6-306 are constitutional within the meaning of Article XI-E, § 1.

*1.     Applying* Birge.

This Court previously laid out the test to determine whether an issue is a municipal affair within the meaning of Article XI-E in *Birge*.  Although Ocean City claims that *Birge* is limited to determining whether a locally adopted law is unconstitutional, we expressly stated in *Birge* that our decision, and ensuing test, governs whether an issue relates to the

---

[6] Neither party disputes that TP §§ 6-305 and 6-306 are general laws that apply non-uniformly.  The central issue here is whether TP §§ 6-305 and 6-306 "relat[e] to the incorporation, organization, government, or affairs" of Ocean City in violation of Article XI-E, § 1.

13

"incorporation, organization, government, or affairs of [a] municipality" as understood by the Sobeloff Commission and in accord with the underlying intent behind Article XI-E. 274 Md. at 644. It is immaterial that the *Birge* Court analyzed the language of Article XI-E, § 3, instead of § 1, because the relevant language in both sections—"relat[ing] to the incorporation, organization, government, or affairs" of the municipal corporation—is identical. *Compare* Md. Const. art. XI-E, § 1, *with* Md. Const. art. XI-E, § 3; *see Whack v. State*, 338 Md. 665, 673 (1995) (explaining that when identical language is used in different provisions of the same statute it is presumed to have identical meaning).

In applying the *Birge* test to this case, it is clear that requiring Worcester County to grant Ocean City or its taxpayers a setoff will significantly impact people outside of Ocean City. Specifically, doing so would result in higher tax rates for property owners who reside in Worcester County, but not Ocean City. Ocean City even conceded as much in its pleadings before the circuit court. *See Town of Ocean City, Tax Differential Study* (Nov. 28, 2007) (describing that requiring a mandatory tax setoff for Ocean City residents would result in increased tax rates for Worcester County residents who live outside of Ocean City); *see also Town of Ocean City, Tax Differential Study* (Feb. 2013) (detailing same). Because the effect of granting a tax setoff to Ocean City would "be felt by a considerable number of people outside the city and in a rather strong degree," a straightforward application of the *Birge* test demonstrates that both TP §§ 6-305 and 6-306 fall beyond the prohibitory language of Article XI-E, § 1. 274 Md. at 644. The broad effect of the General Assembly's tax setoff framework on the residents of Worcester County who do not reside in Ocean City suggests that the provisions do not affect purely local matters and therefore

14

do not "relat[e] to the incorporation, organization, government, or affairs" of Ocean City. *Id.* at 644. Thus, TP §§ 6-305 and 6-306 need not apply uniformly.

2.  *Ocean City's Proposed Alternative Standard and Supporting Case Law.*

Although Ocean City argues that an issue need not be of purely municipal concern under *Birge* in order to fall within the meaning of Article XI-E, § 1, such a conclusion is not borne out by our case law, the purpose of § 1, or the language of TP §§ 6-305 and 6-306. Ocean City's suggested standard for determining whether an issue relates to municipal affairs reaches far too broadly and, in contrast with the intent and language of Article XI-E, would foreclose the General Assembly from regulating even most non-local matters. According to Ocean City, an issue is a municipal affair within the meaning of Article XI-E if it merely impacts a municipality. However, this interpretation of the tax setoff statutes conflates issues of municipal concern with municipal affairs that should be limited to local legislation.

Although any given municipality's residents are impacted by the county taxation rates set under TP §§ 6-305 and 6-306, those provisions apply to entire counties, rather than any single municipality such as Ocean City. Guidance from the Maryland Office of the Attorney General has repeatedly emphasized this distinction in the specific context of the Tax-Property Article. *See* Letter to Senator Leo E. Green from Richard E. Israel, Assistant Att'y General, Maryland (Mar. 29, 1983) (noting that the Attorney General "raised no constitutional objection to the exemption of [certain] counties" under

15

Maryland's tax setoff scheme because it applies to "county taxpayers, generally").[7]

Embracing this distinction, it would be inappropriate to allow Ocean City to mandate a county taxation scheme merely because its residents are impacted locally by county taxation rates. Similarly, Ocean City's ability to impose taxes or maintain police and fire services within its borders does not support its argument that TP §§ 6-305 and 6-306 are unconstitutional. Ocean City's authority to impose taxes or maintain services within its own borders does not equate to Ocean City having the broader authority to do so at the county level.

Nor do we find that the cases cited by Ocean City support the proposition that TP §§ 6-305(b) and 6-306 are unconstitutional as applying non-uniformly despite relating to municipal affairs within the meaning of Article XI-E, § 1. For instance, Ocean City cites *City of Annapolis v. Wimbleton, Inc.*, in which the Court of Special Appeals held that an act of the General Assembly regarding annexation was unconstitutional because it failed to apply uniformly to all municipalities. 52 Md. App. 256, 267–68 (1982). However, annexation is distinguishable here. Annexation, as opposed to the tax setoff framework created by the General Assembly, predominantly impacts only individual municipalities rather than entire counties. *See* Letter to Delegate George C. Edwards from Richard E.

---

[7] Ocean City correctly identifies that this Court has no obligation to accept the judgment of the Attorney General or Assistant Attorney General. However, we may still accept such opinions as persuasive when appropriate. *See, e.g.*, *Dodds v. Shamer*, 339 Md. 540, 556 (1995) ("While not binding on this Court, the opinion of the Attorney General is entitled to careful consideration."); *Grant v. Cty. Council of Prince George's Cty.*, 465 Md. 496, 531 (2019) (relying on communications from the Office of the Attorney General).

16

Israel, Assistant Att'y General, Maryland (Feb. 28, 1986) (distinguishing *Wimbleton* from TP §§ 6-305 and 6-306 because annexation "manifestly deal[s] with the 'affairs' of municipal corporations within the meaning of Article XI-E, Sec. 1" given that it does not have county-wide effects) (quoting Md. Const. art. XI-E, § 1). Moreover, the other cases that Ocean City cites to support the proposition that TP §§ 6-305(b) and 6-306 are unconstitutional within the meaning of Article XI-E are inapposite on the same ground.[8]

Our application of the *Birge* test, and our review of the General Assembly's intent in enacting TP §§ 6-305 and 6-306, make it clear that the General Assembly intended to treat taxes differently than purely local matters that fall within a municipality's control. The uniformity requirement of Article XI-E, § 1 does not apply to TP §§ 6-305 and 6-306 because the statutes do not relate to purely local affairs—their provisions have a significant impact on the tax rate imposed on *all* residents of Worcester County. Ocean City's suggested alternative to the *Birge* test stretches the language of Article XI-E, § 1 far too broadly. Moreover, Ocean City provides no case law supporting such an expansive standard under which TP §§ 6-305 and 6-306 are required to apply uniformly to all municipalities alike. We therefore decline to adopt Ocean City's expansive view of Article

---

[8] Each case that Ocean City additionally cites for this proposition is distinguishable for similar reasons. First, *City of Gaithersburg v. Montgomery County*, 271 Md. 505 (1974), dealt with zoning and annexation. Second, *Gordon v. Commissioners of St. Michaels*, 278 Md. 128 (1976), also dealt with zoning. Finally, *Bowie Inn, Inc. v. City of Bowie*, 274 Md. 230 (1975), dealt with trash disposal. All of these powers primarily impact individual municipalities only. Moreover, each of these powers, as Ocean City cites in its briefs, are expressly delegated to municipalities under Maryland's Local Government Article, unlike the ability to mandate a county-wide tax scheme.

XI-E, § 1 and, in affirming the judgment of the Court of Special Appeals below, uphold the constitutionality of TP §§ 6-305 and 6-306.

   *3.    Epilogue: County Delegations of the General Assembly.*

The legislative practices of the county delegations, known as "select committees," of the General Assembly further support the constitutionality of TP §§ 6-305 and 6-306. "This Court provides judicial deference to the policy decisions enacted into law by the General Assembly." *Johnson v. State*, 467 Md. 362, 371 (2020) (quoting *Blackstone v. Sharma*, 461 Md. 87, 113 (2018)). On local matters, these policy decisions are largely the result of individual county delegations conferring to determine the applicability of legislation to each county, including whether such applicability will vary between counties. *See In re Legislative Districting of State*, 370 Md. 312, 359–60 (2002) (explaining that "[i]n practice, members of the General Assembly from [county delegations] decide upon the legislation for the county[,]" resulting in "the General Assembly regularly mak[ing] exceptions to and variations in public general laws on a county-by-county basis"); *see also Fell v. State*, 42 Md. 71, 94, 103 (1875) (describing that county delegations, acting as "units of our State political organization," inherently recommend specific legislation on a county-by-county basis, including the levying of taxes).

This Court aptly described the "local courtesy" afforded to county legislative delegations in explaining that:

> "Local courtesy" is an unwritten, commonly observed custom where the members of both the House and the Senate of the General Assembly defer to the representatives of a particular jurisdiction, i.e. a county's local legislative delegation, on matters affecting only that district. Pursuant to the local courtesy practice, once legislation affecting a certain singular

18

jurisdiction is approved and recommended by that jurisdiction's local delegation, the members of the General Assembly vote unanimously in support of such legislation, preferring to leave local issues to local leaders.

*Getty v. Carroll Cty. Bd. of Elections*, 399 Md. 710, 724 n.13 (2007).

The Tax-Property Article provisions at hand are a prime example of the varying decisions of county delegations before the General Assembly. Here, some delegations have determined, as a matter of policy, that tax setoffs between their counties and the municipalities therein are mandatory.[9] In others, such as Worcester County, it was determined that these tax setoffs should be discretionary with the requirement that the county meet annually to discuss the possibility of exercising this discretion. Such decisions regarding legislative variance on a county-by-county basis are "left to the gentle graces of local county delegations under an unwritten local courtesy." *Wash. Suburban Sanitary Comm'n v. Elgin*, 53 Md. App. 452, 454 (1983); *see also* Department of Legislative Services, Maryland General Assembly, *Legislator's Handbook*, at 22–23 (Vol. 1 2018) (describing county delegation process and local courtesy).

As a legislative matter, Ocean City's requested relief more appropriately belongs within the Worcester County Delegation of the General Assembly.

## CONCLUSION

For the reasons set forth above, we hold that TP §§ 6-305 and 6-306 are constitutional under Article XI-E, § 1 of the Maryland Constitution. Under the test articulated in *Birge*, the tax setoff statutes strongly affect Worcester County residents who

---

[9] As noted earlier, a municipality that is entitled to mandatory setoffs must demonstrate that it "performs services or programs instead of similar county services." TP § 6-305(c).

reside outside of Ocean City, such that we cannot classify them as affecting purely local matters. Because of the significant tax implications on Worcester County residents outside of Ocean City, TP §§ 6-305 and 6-306 are not required to apply uniformly, as they do not "relat[e] to the incorporation, organization, government, or affairs" of any municipal corporation, including Ocean City. We therefore decline to reach the issue of severability and affirm the judgment of the Court of Special Appeals below.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

20